[No. B025587. Second Dist., Div. Five. Sept. 15, 1988.]

PIER GHERINI et al., Plaintiffs and Appellants, v.
CALIFORNIA COASTAL COMMISSION et al., Defendants and
Respondents.

702

**COUNSEL**

Sullivan, Workman & Dee, Roger M. Sullivan, Henry K. Workman, Frances Gherini and John Gherini for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, N. Gregory Taylor, Assistant Attorney General, and Peter H. Kaufman, Deputy Attorney General, for Defendants and Respondents.

**OPINION**

**LUCAS, P. J.**—This appeal is taken from judgment denying appellants' petition for peremptory writ of administrative mandate and dismissing their complaint for inverse condemnation.

FACTS

This case involves the unique natural characteristics of one of the Channel Islands and the application of the California Coastal Act (Act) to a land use plan for the island.

Santa Cruz Island is located in the Santa Barbara Channel approximately 19 miles from the mainland. It is roughly 62,000 acres in size and is divided into two ranches and an ecological preserve. The Gherini Ranch owned by the appellants is on the eastern end of the island and is 6,700 acres in size. The Santa Cruz Island Company Ranch is a cattle ranch comprising 42,500 acres. The ecological preserve is currently 12,500 acres in size and is held by the Nature Conservancy. The Nature Conservancy also holds a conservation easement over the Santa Cruz Island Company Ranch and is scheduled to gain control over that land during the next 24 years, thereby controlling approximately 90 percent of the island.

Santa Cruz Island is one of five islands included in the Channel Islands National Park in order to protect its nationally significant natural, scenic, wildlife, marine, ecological, archaeological, cultural and scientific values. The waters within one nautical mile of Santa Cruz Island have been designated by the State Regional Water Quality Control Board as an "Area of Special Biological Significance" because of the location there of biological communities of extraordinary value.

In addition, an area extending six nautical miles in all directions from the island has been designated by the Secretary of Commerce as a marine sanctuary because of the extraordinary assemblage of marine mammals, endangered sea birds and important fishery resources in and around the island.

Under the Act (Pub. Resources Code, § 30000 et seq.),[1] Santa Barbara County (County) was required to prepare a local coastal program, including a land use plan and a set of implementation maps and ordinances for all lands and waters within its jurisdiction which lay within the California coastal zone. This included Santa Cruz Island, Santa Rosa Island, which is another of the Channel Islands, and the mainland coastal areas within the County.

The local coastal program had to be submitted to the Coastal Commission (Commission) for review as to its compliance with the Act. (§ 30512.) The County accordingly submitted a land use plan for review in January

[1] Unless otherwise indicated, all section references are to the Public Resources Code.

1980. The portion of the plan relating to the Channel Islands would have permitted oil and gas development on Santa Cruz Island and would have allowed the Gherini and Santa Cruz Island Company ranches to be broken down into 320-acre "ranchettes." This portion of the plan was rejected by the Commission in December 1980 as inconsistent with the resource and agricultural protection policies of the Act.

In March 1981, the County resubmitted its land use plan to the Commission. As revised, the plan would have permitted oil and gas development on the island as a conditional use which could not occur unless the County could find, among other things, that the public would be better off with than without the proposed project. As to subdivision of the ranches, the County retained the 320-acre parcel size and allowed conversion of a portion of the land for coastal dependent industry, commercial visitor-serving uses or public recreation if necessary to maintain continued agricultural use of the balance of the parcel. It also allowed application of a clustered residential land use proposal similar to a plan developed for a large mainland coastal ranch. This plan allowed residential development at a density of up to one unit per acre on 2 percent of the land, commercial visitor-serving and public recreational uses on 1 percent of the land and permanent reservation of the remaining 97 percent for agricultural and open space.

The Commission again found oil and gas development on Santa Cruz Island inconsistent with the Act and also rejected the higher density residential use as inconsistent with the protective policies of the Act. The Commission denied certification of the land use plan as submitted.

The Commission gave the County a set of changes it could make in the land use plan which would permit certification. The changes required prohibition of all energy development on the island and limited residential development to one principal residence per 320-acre parcel. All residential development on the island was to be clustered on no more than 2 percent of the gross area. As applied to the Gherini Ranch, this would permit only 21 dwelling units.

The Gherinis brought the within petition for writ of mandate challenging the Commission's decision to deny certification of the County's plan. Causes of action for declaratory relief and inverse condemnation were also included. The trial court upheld the Commission's decision and found that the Commission's actions did not constitute a taking or damaging of their property. Judgment was entered against the Gherinis from which this appeal is taken.

## AUTHORITY OF COASTAL COMMISSION

Appellants contend the Commission exceeded its authority under the Act in requiring the County to ban all oil and gas development on the Channel Islands in order for its land use plan to be certified. The trial court found the Commission acted within its jurisdiction, and that substantial evidence supported its decision. We agree.

■ The Commission has the duty to review local coastal programs submitted to it to determine whether they are in conformity with the policies of the Act. If the Commission finds that a submitted plan meets the requirements and is in conformity with chapter 3 of the Act, the Commission must certify the plan. If the Commission finds there is a substantial issue as to conformity, it must hold a public hearing on that issue, and then determine whether or not to certify the proposed plan. If the Commission decides not to certify a land use plan, it must provide a written explanation and may suggest modifications, which, if adopted by the local government, would cause the plan to be deemed certified. (§ 30512.)

Pursuant to its statutory duty, the Commission initially identified as a substantial issue and then denied certification to the portion of County's plan permitting oil and gas development in Santa Cruz Island. The County modified the plan to allow oil and gas development only upon issuance of a conditional use permit. The conditional use permit could only be issued if the County made the specific findings required by section 30260. The Commission again refused to certify this portion of the plan, finding that a plan permitting any hydrocarbon development on Santa Cruz Island was not in compliance with the Act.

The Commission first found that hydrocarbon development on Santa Cruz Island would be inconsistent with the resource protection policies of the Act. Such policies include section 30230, which requires that marine resources be maintained, enhanced and, if feasible, restored, and that special protection be given to areas and species of special biological or economic significance. (See also §§ 30231, 30240.)

The evidence before the Commission amply established the biological significance of Santa Cruz Island. For example, the State Regional Water Quality Control Board designated the waters surrounding the island as an area of special biological significance because they contain "biological communities of such extraordinary, even though unquantifiable, value that no acceptable risk of change in [its environment] as a result of man's activities can be entertained." Santa Cruz Island was included in the Channel Islands National Park to protect its significant natural, scenic, wildlife, marine,

ecological, archaeological, cultural, and scientific values. Moreover, the area extending six nautical miles in all directions from Santa Cruz Island was designated by the Secretary of Commerce as a marine sanctuary because of the extraordinary assemblage of marine mammals, endangered seabirds and important fishery resources in and around the island.

Accepting this evidence of the biological significance of the area, the Commission determined that energy development on the island would be inconsistent with the resource protection policies of the Act. Appellants do not challenge this determination.

■ Their challenge is to the Commission's further determination that the energy development plan did not satisfy the standards for exception to the consistency requirement under section 30260. That section provides that even when coastal-dependent industrial facilities such as oil and gas development cannot feasibly be accommodated consistently with the policies of the Act, "[T]hey may nonetheless be permitted in accordance with [§ 30260] and Sections 30261 and 30262 if (1) alternative locations are infeasible or more environmentally damaging; (2) to do otherwise would adversely affect the public welfare; and (3) adverse environmental effects are mitigated to the maximum extent feasible."

The Commission noted that a site probably could be found on the island for energy development in accordance with the first criterion of section 30260. However, the Commission found that the second criterion was not satisfied.

The second part of the test under section 30260 for permitting otherwise inconsistent coastal development is the determination that "to do otherwise would adversely affect the public welfare." Appellants claim the Commission improperly weighed environmental effects of development against public benefit in making this determination, rather than solely considering the adverse impact on the public welfare of prohibiting energy development. We do not read the section so narrowly.

In section 30001 of the Act, the Legislature expressly found the coastal zone to be "a distinct and valuable natural resource of vital and enduring interest to all the people" which "exists as a delicately balanced ecosystem." Permanent protection of the state's natural and scenic resources was therein declared to be a paramount concern to the residents of the state and nation. The Legislature further found that in order to promote the public safety, health and welfare, protect public and private property, wildlife, marine fisheries, ocean resources and the natural environment, "it is necessary to protect the ecological balance of the coastal zone and prevent its deteriora-

tion and destruction." The Legislature also recognized that existing developed uses and carefully planned future development consistent with the policies of the Act are essential to the economic and social well-being of the people of California. Implicit in these findings is the understanding that the public welfare involves both protection and preservation of natural coastal resources and the need for some coastal development.

Further recognition of the competing needs for coastal preservation and coastal development is found in section 30001.2, in which the Legislature declared that although coastal-dependent development such as oil and gas development "may have significant adverse effects on coastal resources or coastal access, it may be necessary to locate such developments in the coastal zone in order to ensure that inland as well as coastal resources are preserved and that orderly economic development proceeds within the state."

It is clear from these express legislative findings that a determination of what will adversely affect the public welfare requires consideration of the preservation and protection of the state's natural resources and the ecological balance of the coastal zone as well as the need for a particular type of coastal-dependent development. The Commission quite properly balanced the risk of harm to the highly sensitive and unique natural resources in and around Santa Cruz Island against the public's need to permit oil and gas development in ascertaining whether refusal to permit such hydrocarbon development would adversely affect the public welfare.

■ As noted above, the biological significance and ecological sensitivity of the area was fully documented by its national park and sanctuary designations by state and federal agencies. The final environmental impact statement prepared on the proposed Channel Islands Marine Sanctuary contained extensive discussion of the potential adverse impact of hydrocarbon development on the marine, mammal and bird populations of the island and advocated a complete ban on such development. Much of that analysis was applicable to the island itself as well as the surrounding waters. Another report, entitled "Analysis of the Economic Impacts of the Proposed Channel Islands Sanctuary Regulations," prepared for the United States Department of Commerce in April 1980, evaluated the potential socioeconomic costs of failure to develop the hydrocarbon resources in the area.

Opinion evidence of experts in environmental planning may constitute substantial evidence upon which the Commission may base its decision. (*City of San Diego* v. *California Coastal Com.* (1981) 119 Cal.App.3d 228, 232 [174 Cal.Rptr. 5].) We find substantial evidence of this nature in the record to support the Commission's determination that, in balance, the

public welfare would not be adversely affected by prohibition of energy development on Santa Cruz Island and thus that the second requirement for exception under section 30260 was not satisfied. In light of this finding, it is unnecessary to examine the Commission's determination as to the third criterion, the mitigation of adverse environmental effects to the maximum extent feasible.

### USURPATION OF LOCAL PLANNING

Appellants argue that the Commission preempted the land use planning and implementation responsibilities of the County by banning all energy development. The only question the Commission should have considered, they claim, was whether the County's plan regulated energy development in conformity with section 30260 of the Act.

The Act clearly contemplates both local and statewide involvement in coastal planning. Section 30004 declares that "(a) To achieve maximum responsiveness to local conditions, accountability, and public accessibility, it is necessary to rely heavily on local government and local land use planning procedures and enforcement." However, subdivision (b) of that same section recognizes that "it is necessary to provide for continued state coastal planning and management through a state [C]oastal [C]ommission" in order to ensure conformity with the Act, provide maximum state involvement in federal activities, protect regional, state and national interests and coordinate the many agencies whose activities affect the coastal zone.

In *City of Chula Vista* v. *Superior Court* (1982) 133 Cal.App.3d 472 [183 Cal.Rptr. 909], the court considered the respective roles of the statewide commission and the local government in coastal planning under the Act. The court concluded that the entire scheme of the Act provides for initial planning to be done locally and final approval to be done by a statewide agency with an eye to statewide policies and limitations. Accordingly, the Commission must exercise its independent judgment on a proposed local program to decide if conformity to state standards has been achieved "because that decision cannot be completely delegated to the local entity where it is likely to be subject to local economic and political pressures which cannot so readily influence the Commission." (*Id.,* at p. 489.)

The County plan in this case would have permitted energy development on Santa Cruz Island pursuant to a conditional use permit issuable if the County found the proposed project was consistent with the policies and requirements of sections 30260 and 30262. Such an arrangement would essentially bypass the Commission's review of the overall County plan for compliance with the Act, allowing the County to directly determine compli-

ance of projects with the Act free of the Commission's statewide perspective. This approach would render the Commission's duty to consider and certify the local coastal programs meaningless.

We have found that substantial evidence supported the Commission's conclusion that a local plan permitting energy development on Santa Cruz Island could not meet the second requirement of section 30260. If the Commission's determination that any such development is inconsistent with the Act is to be meaningful, it must be held to override the County's attempt to retain full authority to determine the consistency of energy development proposals on a case-by-case basis. Therefore, the Commission properly refused to certify the portion of the proposed plan which would have allowed the County to permit energy development pursuant to issuance of a conditional use permit.

## LEGISLATIVE INTENT

■ Appellants further argue it was beyond the power of the Commission to require a total ban on oil and gas development on the Channel Islands when the Legislature had chosen not to do so. They assert that whereas section 30263 expressly prohibits refineries or petrochemical facilities on the Channel Islands, there is no such prohibition of oil and gas development. This they interpret as a legislative intention to permit oil and gas development on the islands, subject to the provisions of sections 30260 and 30263.

We do not find this interpretation persuasive. Nothing in the Legislature's prohibition of refineries suggests that the Commission cannot similarly prohibit other oil and gas related development if it determines such development would be inconsistent with sections 30260 and 30262. Where, as here, the Commission found oil and gas development on the Channel Islands did not meet the requirements of section 30260, it was authorized to refuse to certify a plan permitting such development.

## RESIDENTIAL DEVELOPMENT

■ The Commission also rejected the County's proposed plan for clustered residential development on Santa Cruz Island, although it certified an identical policy for coastal large ranch areas on the mainland. Appellants assert this was an abuse of discretion because the Commission's reasons for rejection were speculative and it reviewed the plan as if it were reviewing a specific permit application rather than a land use plan. We disagree.

The County's land use plan proposed an underlying land use designation for parcels of nonprime agricultural land in excess of 2,000 acres which

would allow subdivision into parcels of 320 acres or more, provided the owners grant an easement to the County or other protective third party to assure these parcels would not be further subdivided or converted to nonagricultural uses. Conversion of a portion of the parcel to allow a priority use such as coastal-dependent industry, commercial visitor-serving uses, or public recreation could be allowed if necessary to maintain continued agricultural use on the balance of the parcel.

The Commission expressed concern about the creation of such small parcels, noting that a University of California Agricultural Extension service report had indicated that approximately 1680 to 1800 acres of land is required to maintain a viable cattle operation. The proposed 320-acre parcels, being smaller, could lead to nonviable parcels for livestock, which would then become more likely subjects for further subdivision or conversion to nonagricultural uses. Such a progression is inconsistent with the intent of section 30242 to prevent conversion of agricultural land to nonagricultural use unless continued or renewed agricultural use is not feasible.

The Commission was satisfied that this concern could be adequately met by clustering of residential uses to minimize agricultural/residential conflicts and by dedication of development rights or an open space easement to put future purchasers on notice of the permanent prohibition of further land divisions and nonagricultural uses. With such additional restriction, the Commission found this portion of the land-use plan would be consistent with the Act.

While approving the concept of clustered residential development on 2 percent of the island and public recreation or visitor services on 1 percent of the island, the Commission rejected the proposed density of up to one dwelling per acre set forth in Policy 8-9. As in the County plan for energy development, this portion of the proposed plan would have permitted such projects only upon the County's making specific findings that the project was consistent with the policies of the Act.

The Commission found this portion of the plan inconsistent with the policies for marine resource protection (§ 30230), biological productivity and water quality protection (§ 30231), protection of sensitive habitat areas (§ 30240), and new development siting (§ 30250). Noting that Santa Cruz and Santa Rosa Islands are remote from existing developed areas, the Commission explained its concerns: "The intensity of residential development allowed on the islands by Policy 8-9 would cause a substantial increase in boat or air traffic to the islands. Such activities, and facilities to serve additional traffic and residents, would disturb environmentally sensitive habitat areas. Grading and construction of residential structures, roads and

service systems as well as noise and activities associated with such uses would degrade sensitive habitat areas. Many impacts of construction and continued use, such as landform alteration, traffic, the presence of people, etc. are similar to those discussed in the findings on Energy Development regarding marine habitats and the impacts of increased offshore activities on such habitats."

Appellants dispute the support for these findings regarding density, claiming there was no evidence showing that the increased density from 21 parcels under the approved 320-acre plan to the 134 parcels under the rejected Policy 8-9 would be excessive.

However, the land use plan did not just involve the 6,700 acre Gherini Ranch; it covered all of Santa Cruz Island, a total of 61,700 acres, as well as Santa Rosa Island,[2] which is 53,600 acres. Thus, the 320-acre plan would permit a total of 193 parcels on all of Santa Cruz Island, and a total of 167 parcels on Santa Rosa Island, in contrast to 1,234 parcels on Santa Cruz and 1,072 on Santa Rosa under the one-acre development plan. The contrast is dramatic and illuminates the Commission's serious concern regarding the effect of the increased density proposed under the one-acre clustered development plan. The Commission's determination that an increase in density from 193 parcels to as many as 1,234 parcels was excessive in terms of the extreme sensitivity of the environment and remoteness of the island and therefore inconsistent with the policies of the Act is not mere speculation but a matter of common sense, strongly supported by evidence in the administrative record.

In the absence of countervailing evidence that the impact of the one-acre density plan would be consistent with the policies of the Act, the Commission properly denied certification of the one-acre development plan. (See *Patterson* v. *Central Coast Regional Com.* (1976) 58 Cal.App.3d 833, 850 [130 Cal.Rptr. 169].)

Such consistency was not established by the requirement in the plan that the County approve each proposed project for consistency with the Act. As we noted in regard to the energy development portion of the plan, it is for the Commission to decide in the first instance whether a proposed plan is consistent with the Act, and this determination cannot be sidestepped by a local government's plan which seeks to retain such decisionmaking authority.

[2]Santa Rosa Island has since been purchased by the federal government as part of the Channel Islands National Park.

## Trial Court's Finding

█ Appellants are correct in their assertion that the trial court apparently misconstrued the Commission's reasons for finding the one-acre development plan inconsistent with the Act. However, it is well established that a ruling or decision which is correct in law will not be disturbed on appeal simply because it was given for a wrong reason. (*Board of Administration* v. *Superior Court* (1975) 50 Cal.App.3d 314, 319 [123 Cal.Rptr. 530].)

As discussed above, the Commission's refusal to certify the one-acre clustered development plan was well supported by the evidence. Thus, the trial court's determination that the refusal was not an abuse of discretion and that the decision is supported by the evidence is a correct ruling, and we therefore affirm it even though the trial court's decision was not based on the same analysis used by the Commission.

## Inverse Condemnation

Appellants also challenge the trial court's adverse determination on their cause of action for inverse condemnation, claiming they should have been allowed to go to trial on the issue, rather than have it decided on the basis of the administrative record. They concede the trial court was correct in finding that "on its face" the Commission's determination did not constitute a compensable taking because it permitted development of 21 residential units and some recreational use, and thereby did not deprive appellants of substantially all reasonable use of the property. (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266, 277 [157 Cal.Rptr. 372, 598 P.2d 25], affirmed 447 U.S. 255 [65 L.Ed.2d 106, 100 S.Ct. 2138].) However, they claim they should have been permitted to go to trial to present additional evidence that a taking had actually occurred.

█ It has long been settled in California that the mere adoption of a general plan does not constitute a taking of property giving rise to a cause of action for inverse condemnation. (*Id.,* at p. 278; *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 119-121 [109 Cal.Rptr. 799, 514 P.2d 111].) As explained in *Selby,* to state a cause of action for inverse condemnation, there must be an invasion or appropriation of a property right which directly and specially affects a landowner to his injury. The mere enactment of a zoning regulation or land use plan is not sufficiently definite or final to support a claim for inverse condemnation. (*Selby,* at pp. 119-120.)

This position is consistent with recent United States Supreme Court cases which have refused to adjudicate whether a land use regulation had effected

an unconstitutional taking of an individual's property in the absence of a final, authoritative determination of the type and intensity of development permitted on the subject property under the challenged regulation. (See, for example, *MacDonald, Sommer & Frates* v. *County of Yolo* (1986) 477 U.S. 340, 348-352 [91 L.Ed.2d 285, 294-296; 106 S.Ct. 2561]; *Agins* v. *Tiburon, supra,* 447 U.S. at pp. 261-262 [65 L.Ed.2d at pp. 112-113].)

■ No such determination has yet been made in the case before us. The Commission has merely refused to certify the County's proposed land use plan and has presented recommendations for revision which would permit certification. These recommendations, on their face, do not deprive appellants of all economic use of their property, as the trial court correctly found.

The Commission has not yet approved a land use plan covering appellants' property, nor has such plan been applied to proposed development by appellants. Thus, the question of whether the Commission's suggested revisions of the proposed plan, as applied to appellants, constitutes a taking is not yet ripe for judicial review. (*MacDonald, Sommer & Frates* v. *County of Yolo, supra,* 477 U.S. at pp. 348-350 [91 L.Ed.2d at pp. 294-295].) There was no error in the trial court's refusal to set the inverse condemnation claim for trial.

■ We further note that a cause of action for inverse condemnation cannot be stated based on a land use regulation which merely causes a diminution in the value of previously unrestricted land. (*HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 514 [125 Cal.Rptr. 365, 542 P.2d 237].) ■ Appellants claim is essentially that the value of their land has been lessened based on the development restrictions, and thus is not a viable claim for inverse condemnation.

We also find no assistance for appellants in the recent United States Supreme Court case of *First Lutheran Church* v. *Los Angeles County* (1987) 482 U.S. 304 [96 L.Ed.2d 250, 261-262, 107 S.Ct. 2378], upon which they rely. That case does not turn on whether there has been a taking, but rather what compensation is required as a remedy for temporary regulatory takings. The state court in that case had already made a determination that the challenged ordinance denied the landowner of all use of its property, and thus the issue of taking was not presented.

## Disposition

The judgment is affirmed.

Boren, J., and Kennard, J., concurred.