[No. B234353. Second Dist., Div. Eight. May 10, 2012.]

CITY OF MALIBU et al., Plaintiffs and Respondents, v.
CALIFORNIA COASTAL COMMISSION, Defendant and Appellant;
SANTA MONICA MOUNTAINS CONSERVANCY et al., Real Parties in
Interest and Appellants.

COUNSEL

Kamala D. Harris, Attorney General, John A. Saurenman, Assistant Attorney General, and Jamee Jordan Patterson, Deputy Attorney General, for Defendant and Appellant and for Real Party in Interest and Appellant Santa Monica Mountains Conservancy.

Richards, Watson & Gershon, Steven H. Kaufmann and Ginetta L. Giovinco for Real Party in Interest and Appellant Mountains Recreation & Conservation Authority.

Jenkins & Hogin, Christi Hogin, City Attorney, and Gregg Kovacevich for Plaintiff and Respondent City of Malibu.

Diane M. Matsinger; Brownstein Hyatt Farber Schreck and Timothy H. Irons for Plaintiff and Respondent Ramirez Canyon Preservation Fund.

OPINION

GRIMES, J.—

## SUMMARY

In this case, we decide the California Coastal Commission (Coastal Commission) acted in excess of its jurisdiction when it approved amendments to a city's certified local coastal program at the request of state agencies, over the objections of the city, where the amendments were not requested to undertake a public works project or energy facility development, but instead changed the city's land use policies and development standards as they would apply to future plans for development within the city. Having found the Coastal Commission exceeded its authority by amending the city's certified local coastal program for such purposes, we need not decide whether the trial court erred in finding the Coastal Commission was required to comply with the 30-day public review period applicable to environmental impact reports under the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.), rather than with the seven-day period provided in the Coastal Commission's regulations.

## FACTUAL AND LEGAL BACKGROUND

The city in this case is Malibu. The state agencies proposing changes to the land use policies and development standards in Malibu are the Santa Monica Mountains Conservancy and the Mountains Recreation and Conservation Authority (MRCA), a joint powers agency of which the conservancy is a constituent member (collectively, the Conservancy). The Conservancy owns four noncontiguous park properties within the city. Malibu asked the Coastal Commission to certify changes to its certified local coastal program to accommodate most, but not all, of the proposals of the Conservancy. Dissatisfied with Malibu's amendment, the Conservancy asked the Coastal Commission to certify different amendments, over the objections of Malibu and the Ramirez Canyon Preservation Fund, a nonprofit mutual benefit corporation whose members are residents of Ramirez Canyon, where one of the Conservancy's park properties is located. The Coastal Commission rejected Malibu's amendments and approved the Conservancy's proposed changes under a provision of

the California Coastal Act of 1976 (Coastal Act; Pub. Resources Code, § 30515) known as the "override" provision.[1] The override provision allows the Coastal Commission to override a local government's refusal to amend its local coastal program, but only under specific, narrow conditions.

1. *The Legal Background: Goals, Policies and Local Coastal Programs*

The California Coastal Act was passed in 1976. In it, the Legislature announced five "basic goals of the state for the coastal zone." (§ 30001.5.) One of these is to "[m]aximize public access to and along the coast and maximize public recreational opportunities in the coastal zone consistent with sound resources conservation principles and constitutionally protected rights of private property owners." (*Id.*, subd. (c).) The Legislature declared both local and state involvement necessary, finding it was "necessary to rely heavily on local government and local land use planning procedures and enforcement" (§ 30004, subd. (a)), and that it was "necessary to provide for continued state coastal planning and management through a state coastal commission." (*Id.*, subd. (b).) Cities and counties remained free "to adopt and enforce additional regulations, not in conflict with [the Coastal Act], imposing further conditions, restrictions, or limitations with respect to any land or water use or other activity which might adversely affect the resources of the coastal zone." (§ 30005, subd. (a).)

The Coastal Act requires every local government in the coastal zone to prepare a local coastal program containing "a specific public access component to assure that maximum public access to the coast and public recreation areas is provided." (§ 30500, subd. (a).) "The precise content of each local coastal program shall be determined by the local government . . . in full consultation with the commission and with full public participation." (§ 30500, subd. (c).) Chapter 3 of the Coastal Act (§§ 30200–30265.5) describes the policies that "shall constitute the standards by which the adequacy of local coastal programs . . . and the permissibility of proposed developments subject to [the Coastal Act] are determined." (§ 30200, subd. (a).) These include the policy that "maximum access . . . and recreational opportunities shall be provided for all the people consistent with public safety needs and the need to protect public rights, rights of private property owners, and natural resource areas from overuse." (§ 30210.)

A land use plan is one part of a local coastal program (sometimes referred to herein as LCP). A land use plan is defined in the Coastal Act to mean the local government's general plan, describing the kinds, location, and intensity of permissible land uses, resource protection and development policies and,

---

[1] All further statutory references are to the Public Resources Code.

where necessary, a list of implementing actions. (§ 30108.5.) "Implementing actions" are ordinances, regulations or programs that implement a certified LCP. (§ 30108.4.) An LCP includes a land use plan, as well as zoning ordinances, zoning district maps, and other implementing actions. (§ 30108.6.)

The Coastal Commission "shall certify a land use plan, or any amendments thereto, if it finds that a land use plan meets the requirements of, and is in conformity with, the policies" delineated in chapter 3. (§ 30512, subd. (c).) The Coastal Commission's review of a local government's land use plan is expressly limited to its determination that the plan "does, or does not, conform with" the requirements of chapter 3. (§ 30512.2, subd. (a).) The Coastal Commission "is not authorized by any provision of [the Coastal Act] to diminish or abridge the authority of a local government to adopt and establish, by ordinance, the precise content of its land use plan." (*Ibid.*) Further, the Coastal Commission is to require conformance with chapter 3 policies "only to the extent necessary to achieve the basic state goals specified in Section 30001.5." (*Id.,* subd. (b).)

2. *The Legal Background: Amendments to a Certified Local Coastal Program*

Malibu (or the city) has had a certified local coastal program since 2002. Malibu did not prepare and submit its own program, and in 2000, the Legislature enacted a law requiring the Coastal Commission to submit an initial draft of the land use portion of the local coastal program to the city (§ 30166.5, subd. (a)), and to adopt a local coastal program for the area (after public hearing and consultation with the city). (§ 30166.5, subd. (b).) The Coastal Commission did so, and Malibu's local coastal program was "deemed certified" and "constitute[s] the certified local coastal program for the area" for "all purposes of [the Coastal Act]." (*Ibid.*)

A local government may amend its certified local coastal program "and all local implementing ordinances, regulations, and other actions," but no such amendment may take effect "until it has been certified by the commission." (§ 30514, subd. (a).) An " 'amendment of a certified local coastal program' includes, but is not limited to, any action by a local government that authorizes the use of a parcel of land other than a use that is designated in the certified local coastal program as a permitted use of the parcel." (§ 30514, subd. (e).)

Other than the local government itself, an amendment to a certified local coastal program may be proposed only by "[a]ny person authorized to undertake a public works project or proposing an energy facility develop-ment . . . ." (§ 30515.) " 'Public works' means the following: [¶] . . . [¶] (c)

All publicly financed recreational facilities, all projects of the State Coastal Conservancy, and any development by a special district." (§ 30114.) An amendment may be proposed *only* "if the purpose of the proposed amendment is to meet public needs of an area greater than that included within such certified local coastal program that had not been anticipated by the person making the request at the time the local coastal program was before the commission for certification." (§ 30515.)

The local government must then decide whether or not to amend its local coastal program, subject to Coastal Commission certification. If it does not, section 30515 (the override provision) allows "such person" (the proponent of the public works or energy development) to ask the Coastal Commission to amend the local government's local coastal program. The Coastal Commission, after public hearing, may do so, if it finds, "after a careful balancing of social, economic, and environmental effects, that to do otherwise would adversely affect the public welfare"; "a public need of an area greater than that included within the certified local coastal program would be met"; "there is no feasible, less environmentally damaging alternative way to meet such need"; and "the proposed amendment is in conformity with the policies" of the Coastal Act. (§ 30515.)

### 3. The Legal Background: Authority to Issue Coastal Development Permits

Chapter 7 of the Coastal Act (§§ 30600–30627) governs development in the coastal zone. Any person who wishes to undertake any development in the coastal zone (except for emergency repairs and maintenance, and other than power facilities subject to other statutes) must obtain a coastal development permit. (§ 30600, subd. (a).) Except for limited rights of appeal to the Coastal Commission, a coastal development permit must be obtained from the local government after the Coastal Commission has certified a local coastal program, or LCP. (§ 30600, subd. (d).) After certification, "development review authority . . . shall no longer be exercised by the commission over any new development proposed . . ." and "shall at that time be delegated to the local government that is implementing the local coastal program . . . ." (§ 30519, subd. (a).) The only grounds for appeal to the Coastal Commission from the local government's action on a coastal development permit for a major public works project or a major energy facility are that the development does, or does not, conform to the certified LCP and the Coastal Act's public access policies.[2] (§ 30603, subds. (a)(5), (b)(1), (2).)

---

[2] The Coastal Act also provides that "plans for public works" may be submitted to the Coastal Commission for review: "To promote greater efficiency for the planning of any public works . . . and as an alternative to project-by-project review, plans for public works . . . may be submitted to the commission for review in the same manner prescribed for the review of local coastal programs . . . ." (§ 30605.) If a plan for public works is submitted *after* certification of

"Development" is defined in section 30106: " 'Development' means, on land, in or under water, the placement or erection of any solid material or structure; discharge or disposal of any dredged material or of any gaseous, liquid, solid, or thermal waste; grading, removing, dredging, mining, or extraction of any materials; change in the density or intensity of use of land, including, but not limited to, subdivision . . . , and any other division of land, including lot splits, except where the land division is brought about in connection with the purchase of such land by a public agency for public recreational use; change in the intensity of use of water, or of access thereto; construction, reconstruction, demolition, or alteration of the size of any structure, including any facility of any private, public, or municipal utility; and the removal or harvesting of major vegetation other than for agricultural purposes, kelp harvesting, and timber operations which are in accordance with a timber harvesting plan submitted pursuant to the provisions of the . . . Forest Practice Act of 1973 . . . . [¶] As used in this section, 'structure' includes, but is not limited to, any building, road, pipe, flume, conduit, siphon, aqueduct, telephone line, and electrical power transmission and distribution line."

The Supreme Court has observed, "The Legislature left wide discretion to local governments to formulate land use plans for the coastal zone and it also left wide discretion to local governments to determine how to implement certified LCPs." (*Yost v. Thomas* (1984) 36 Cal.3d 561, 574 [205 Cal.Rptr. 801, 685 P.2d 1152].) Thus, after certification of a local coastal program, issuance of coastal development permits is the purview of the local government, not the Coastal Commission. And, after certification of an LCP, the Coastal Act mandates—with the singular, narrow exception delineated in the section 30515 override provision—local control over changes to a local government's land use policies and development standards.

### 4. *The Factual Background: How This Case Arose*

In 2007, after many months of public hearings, litigation and negotiations, the Conservancy asked the city to amend its local coastal program to add land use policies and development standards, in part to permit the Conservancy to develop four park properties in Malibu. (The parties refer to the Conservancy's requested policies and development standards as an "overlay" or "overlay district.") The city, which shared the Conservancy's overall goal of

---

an LCP, the Coastal Commission may approve the plan only if it finds, "after full consultation with the affected local governments, that the proposed plan for public works is in conformity with certified local coastal programs in jurisdictions affected by the proposed public works." (*Ibid.*) Once a public works plan is approved by the Coastal Commission, an agency proposing a public works project pursuant to the plan need only show the project is consistent with the certified public works plan. (§ 30606.)

improved recreation areas linked by a trail system, considered the Conservancy's application, following the various notice requirements of the Coastal Act, which are designed to foster public participation in proceedings involving the amendment of a local coastal program. Public hearings were held before the city's planning commission and before the city council on the proposed amendments.

In December 2007, the Malibu city council approved an amendment to the city's local coastal plan (Malibu's LCP amendment). Malibu's LCP amendment contains many changes proposed by the Conservancy, including a comprehensive plan to provide the framework for a proposed trail network to link various publicly owned properties throughout Malibu in a way that would "ensure adjacent lands are protected as natural and scenic areas." It identified site-specific public access, recreational facility, transportation, and public program improvements for the four parks to facilitate an increased level of accessibility for visitors with disabilities.

Malibu's LCP amendment also included Conservancy proposals to allow for development of the Conservancy's Ramirez Canyon property, conditioned on the construction of an alternate access road to the property from Kanan Dume Road. Presently, the only access road to the park is Ramirez Canyon Road, which is a narrow, winding, substandard rural road that provides the sole ingress and egress for residents who live in Ramirez Canyon. Malibu's LCP amendment included outreach programs designed to provide access and recreation opportunities, primarily for disadvantaged youths, physically challenged visitors and seniors; public improvements for riparian area interpretive trail and picnic facilities to provide for the safe use of those facilities in compliance with the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.); picnic and overnight camp areas designed specifically to accommodate disabled visitors and their families; and specialized programs, including events, gatherings, tours, and workshops.

After approving Malibu's LCP amendment, the city submitted it to the Coastal Commission for certification.

The Conservancy, however, did not like Malibu's LCP amendment, principally because of its prohibition on camping at most parks in Malibu and its requirement for construction of a new road as a prerequisite to many public uses in Ramirez Canyon Park. So, in April 2008, the Conservancy submitted to the Coastal Commission its own proposed LCP amendments, asserting the override provision of section 30515 authorized it to do so. The Conservancy asked the Coastal Commission to declare, in effect, that the override procedures contained in the Coastal Commission's regulations authorized the Conservancy to ask the Coastal Commission to certify the Conservancy's

proposed amendments to Malibu's LCP over the objections of the city. (Cal. Code Regs., tit. 14, §§ 13666–13666.4.)[3] The Coastal Commission's executive director determined the override provisions applied, and the Coastal Commission forwarded that determination and the Conservancy's proposed LCP amendments to the city for its consideration and action.

The Conservancy has never claimed its proposed LCP amendments constitute a public works project, and clearly, they do not. The Conservancy aptly entitled its proposed amendments "the Malibu Parks Public Access Enhancement Plan Overlay District" (overlay district). When the Conservancy asked the Coastal Commission to override Malibu's certified local coastal plan, it expressly acknowledged that the Conservancy was not proposing a public works project. The Conservancy's own presentation to the Coastal Commission stated: "It must be noted that there is no specific development proposal being considered at this time. The . . . amendment merely requests that the . . . Overlay . . . be incorporated into the Malibu LCP to provide the policy framework to develop and implement future plans for public parkland improvements. As such, there is no need or requirement to provide for site-specific, quantitative analysis of potential impacts of any development proposal addressed in the Overlay." MRCA describes the proposed overlay district as laying a "policy foundation for future review and approval of specific proposed public works improvements."

Thus, the overlay district substitutes the land use policies and development standards of the Conservancy for the policies and standards certified for Malibu in 2002, and it does *not* seek a permit to develop a public works project. Various policy differences pervade the LCP amendments proposed by Malibu and by the Conservancy. We describe some of the differences here to emphasize that the Conservancy did not propose a public works project; rather, the Conservancy's overlay district proposed different land use policies and development standards than those proposed by the city. We do not suggest which policy choices are right or wrong, as that is not what is in dispute here.

For example, Malibu's LCP amendment approved overnight camping, but only in Ramirez Canyon Park. The amendment was designed specifically to accommodate supervised overnight camping programs in Ramirez Canyon Park for disabled visitors and their families, by reservation, conditioned on development of a new access road to the park. Camping would be limited to three overnight campsites. Park properties would be closed when warnings were issued for high fire risk and flash floods.

---

[3] All further citations to "Regulations, section ___," are to the Coastal Commission's regulations. (Cal. Code Regs., tit. 14, § 13001 et seq.)

The Conservancy's proposed overlay district permitted overnight camping not only in Ramirez Canyon Park, but also in Escondido Canyon Park and Corral Canyon Park, designating the campsites as principal permitted uses in parklands and therefore not subject to conditional use permit requirements. The Conservancy would eliminate the city's condition that a new access road be constructed from Kanan Dume Road before camping would be permitted in Ramirez Canyon Park, as well as the restriction of camping to three campsites for supervised programs for the disabled. Instead, the Conservancy would allow two overnight "camp areas" in Ramirez Canyon Park, designed to provide park amenities to disabled visitors and their families. The Conservancy's overlay district deleted the city's requirement that any streambed modification to Ramirez Creek be subject to a coastal development permit and permits from other agencies.

The Conservancy's overlay district permitted camping in Escondido Canyon Park and Corral Canyon Park without advance reservations, instead permitting onsite registration of a campsite, and without stating how many campsites would be permitted in these parks. The overlay district permitted cooking with propane stoves. The overlay district deleted the city's requirement that parks be closed on red flag days and during flash flood warnings or urban/small stream advisories, requiring only "no camping" on those days.

The Conservancy's overlay district eliminated all references in Malibu's LCP amendment to the need to obtain a coastal development permit in connection with the building of parking lots, public restrooms, ranger housing, administrative personnel facilities and nature centers. The Conservancy's overlay district eliminated city participation in the design or development of parkland and trail improvements and deleted a requirement that new parking facilities should be constructed of permeable material to allow for percolation of runoff.

The Conservancy's overlay district struck all of the city's references to avoiding intrusive traffic circulation in residential neighborhoods and most of the city's restrictions on amplified music in Ramirez Canyon Park. Whereas Malibu's LCP amendment permitted the Conservancy to have administration offices for up to 15 employees in Ramirez Canyon Park, the Conservancy's overlay district deleted any limitation on the number of employees who could work there.

In short, the Conservancy proposed to override Malibu's local land use plans and policies, certified in 2002, and substitute new ones over the objections of the city, not for the purpose of developing a public works project, but so that, in the future, the Conservancy might obtain approval directly from the Coastal Commission for a public works plan for future

development and programs, thus enabling the Conservancy to avoid having to ask the city for coastal development permits. Moreover, the Conservancy's proposed new land use policies did not change the rules only for its own park properties; the proposed overlay district would have prohibited any fire *outside* any park facility, including backyard fires and barbeques, on any public *or private* property, within 20 feet of any flammable vegetation.[4]

The city adopted a resolution finding that the Conservancy's proposed overlay district was " 'not development subject to the LCP override provisions' " and declined to amend its local coastal program as requested by the Conservancy. The Conservancy then asked the Coastal Commission to certify its overlay district over the city's objections. (§ 30515.)

After public hearings, on June 10, 2009, the Coastal Commission rejected the city's LCP amendment, concluding it was inconsistent with the policies of the Coastal Act, and certified the Conservancy's overlay district as an LCP amendment, with some revisions. Malibu did not seek judicial review of the Coastal Commission's rejection of its proposed LCP amendment.

The city and Ramirez Canyon Preservation Fund filed petitions for writ of mandate in July 2009, seeking declaratory and injunctive relief. In July 2011, the trial court granted the petitions, finding the Conservancy's overlay district was a "plan" rather than a specific public works project and therefore did not qualify for the override procedure. The trial court also concluded CEQA's 30-day notice provision applied, rather than the seven-day review period provided in the Coastal Commission's regulations. Judgment was entered and this appeal followed.

## DISCUSSION

Our inquiry in reviewing the trial court's ruling is whether the Coastal Commission acted in excess of jurisdiction or abused its discretion by not proceeding in a manner required by law. (*Burke v. California Coastal Com.* (2008) 168 Cal.App.4th 1098, 1106 [85 Cal.Rptr.3d 909] (*Burke*).) Because the jurisdictional issue here involves the interpretation of a statute, the issue of whether the Coastal Commission acted in excess of its jurisdiction is a question of law we review de novo. (*Ibid.*) We give no deference to the Coastal Commission's determination in deciding whether its action exceeds the authority delegated to it by the Legislature. (*Ibid.*)

---

[4] When the Coastal Commission approved the Conservancy's proposed LCP amendment, it eliminated the policy prohibiting backyard fires and barbecues, and made a number of other revisions to the Conservancy's proposed LCP amendment, including adding restrictions on amplified music in Ramirez Canyon Park and limiting vehicle trips for all Ramirez Canyon Park uses to 80 trips per day on Ramirez Canyon Road.

We turn first to the override provision, which states, in its entirety:

"Any person authorized to undertake a public works project or proposing an energy facility development may request any local government to amend its certified local coastal program, if the purpose of the proposed amendment is to meet public needs of an area greater than that included within such certified local coastal program that had not been anticipated by the person making the request at the time the local coastal program was before the commission for certification. If, after review, the local government determines that the amendment requested would be in conformity with the policies of this division, it may amend its certified local coastal program as provided in Section 30514.

"If the local government does not amend its local coastal program, such person may file with the commission a request for amendment which shall set forth the reasons why the proposed amendment is necessary and how such amendment is in conformity with the policies of this division. The local government shall be provided an opportunity to set forth the reasons for its action. The commission may, after public hearing, approve and certify the proposed amendment if it finds, after a careful balancing of social, economic, and environmental effects, that to do otherwise would adversely affect the public welfare, that a public need of an area greater than that included within the certified local coastal program would be met, that there is no feasible, less environmentally damaging alternative way to meet such need, and that the proposed amendment is in conformity with the policies of this division." (§ 30515.)

The Conservancy contends that section 30515 authorizes it to apply for an override amendment to Malibu's certified local coastal program solely because the Conservancy is a "person authorized to undertake a public works project," and that it may ask the Commission to override the city's action for purposes other than to obtain a permit to develop a public works project. The Conservancy asks us to interpret section 30515 as requiring, in connection with a request to amend a certified LCP, a specific proposal for an energy facility development, but not for a public works project, contending the Coastal Commission so interpreted the statute on the one other occasion on which the override provision was invoked. This argument violates basic principles of statutory interpretation cited below, and, contrary to the Conservancy's claim, courts do not defer to the Coastal Commission's interpretation of the scope of its authority under the statute. (*Burke, supra,* 168 Cal.App.4th at p. 1106.) The Conservancy has no relevant authority or rational explanation for its position, and we find nothing in the Coastal Act indicating a legislative intent to distinguish a public works project from an energy facility development for purposes of permitting the Coastal Commission to override a local government's land use policies and development standards.

■ "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. *We do not examine that language in isolation, but in the context of the statutory framework as a whole* in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563], italics added.)

■ Section 30515 refers to any person "authorized to undertake a public works project or proposing an energy facility development," and, of course, there is a difference between one who is *authorized* to undertake a development and one who *proposes* to do so. Yet we discern no reason to conclude that difference in phraseology suggests the Legislature intended that *anyone authorized* to undertake a public works project might seek to amend a local government's certified LCP, for any public purpose it may wish to promote and whether or not that purpose includes a public works project. If we were to adopt the Conservancy's interpretation of the statute, that would necessarily mean section 30515 puts all of the hundreds of public works agencies throughout the State of California on equal footing with the City of Malibu to seek Coastal Commission certification of amendments to the city's local coastal program over the city's objections. In the overall context of the Coastal Act, we find the only reasonable interpretation of section 30515 is that it permits a person authorized to undertake a public works project or proposing an energy facility development to seek a Coastal Commission override to allow the person to do exactly that: to undertake a public works project or an energy facility development that would otherwise be prohibited by the land use policies in the local government's certified LCP, and that meets public needs of an area greater than the area included in the LCP that were not anticipated when the LCP was certified.[5]

---

[5] The Coastal Commission and the Conservancy say we should interpret section 30515 as permitting a "person authorized to undertake a public works project" to seek an override that would facilitate a future application to the Commission for approval of a public works plan under section 30605, because this would "streamline" the Coastal Commission's review of important public works projects. That may well be so. But the override provision is an extremely narrow exception to a local government's control over its certified local coastal program, and we have no basis for concluding the Legislature intended the override provision to operate as a device to "streamline" Coastal Commission review of public works projects. Section 30605 merely embodies the legislative intent to empower the Coastal Commission to approve a public works plan if it is in conformity with a certified local coastal program. The

■ Section 30515 creates a narrow exception to the legislative intent expressed in other provisions of the Coastal Act that allow *only* local governments to initiate changes to a certified LCP, with the Coastal Commission reviewing such changes *only* for conformity with the policies of the Coastal Act and *only* to the extent necessary to achieve the basic state goals specified in the statute. (§ 30512.2.) The Coastal Act emphasizes local control after the Coastal Commission has certified a local coastal program: The Coastal Commission must certify a local government's amendments to a land use plan if they are in conformity with the requirements and policies of the Coastal Act. (§ 30512, subd. (c).) The Coastal Commission cannot "diminish or abridge the authority of a local government to adopt . . . the precise content of its land use plan." (§ 30512.2, subd. (a).) Development review authority can no longer be exercised by the Coastal Commission and is "delegated to the local government that is implementing the local coastal program," with limited rights of appeal to the Coastal Commission. (§ 30519, subd. (a); see § 30603.) Indeed, if the Coastal Commission determines that a certified LCP is not being carried out in conformity with a policy of the Coastal Act, the Coastal Commission's power is limited to recommending amendments to the local government's LCP; and if the local government does not amend its LCP, the Coastal Commission's only recourse is to recommend legislative action. (§ 30519.5.)

■ The parties tell us there is no legislative history of section 30515. The City of Malibu cites the Coastal Commission's own regulations on override procedures, which repeatedly use the term "development" to describe the applicability of the LCP amendment override procedures. (Regs., §§ 13666, 13666.2, 13666.4.) The override regulations, for example, refer to a public works project or energy facility development "that requires LCP amendments provided that *the development* meets the . . . two requirements" of the statute. (Regs., § 13666, italics added.) One of those requirements is that the development was "unanticipated *by the person proposing the development*" at the time of LCP certification. (Regs., § 13666, subd. (1), italics added.) And "[a]ll other developments" requiring an amendment must follow the ordinary LCP amendment procedures (Regs., § 13666)—namely, amendment only as proposed by the local government under section 30514. (See *Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 322 [87 Cal.Rptr.2d 423, 981 P.2d 52] ["When an administrative agency construes a statute in adopting a regulation or formulating a policy, the court will respect the agency interpretation as one of several interpretive tools that may be helpful."].)

■ We conclude that the override provision in section 30515 is meant to prevent a local government from standing in the way of the development of a

---

Coastal Commission and the Conservancy have always acknowledged the Conservancy's future plans for public parkland improvements did not conform to Malibu's certified LCP.

public works project or an energy facility that would meet the public needs of an area greater than that encompassed in the local coastal program that were not anticipated when the LCP was certified. The Conservancy's overlay district does not serve that purpose but instead substitutes the land use policies and development standards of the Conservancy and the Coastal Commission for those of the city, in contradiction of the legislative mandate preventing the Coastal Commission from "diminish[ing] or abridg[ing] the authority of a local government" as to "the precise content of its land use plan." (§ 30512.2, subd. (a).) Nothing in the Coastal Act indicates a legislative intent to permit a public agency, simply because it is authorized to undertake public works, to make wholesale revisions to a local government's coastal development policies and standards, untethered to any specific public works project. Consequently, the Coastal Commission exceeded its jurisdiction when it approved the Conservancy's proposed amendments to Malibu's certified local coastal program.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

Bigelow, P. J., and Flier, J., concurred.

Petitions for a rehearing were denied June 5, 2012, and the opinion was modified to read as printed above. The petition of appellant and real parties in interest for review by the Supreme Court was denied August 29, 2012, S203352. Werdegar, J., did not participate therein.