Filed 9/7/18; Modified and certified for publication 10/1/18 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO UNIFIED PORT DISTRICT, | D072954 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2015-00034288-CU-WM-CTL) |
| CALIFORNIA COASTAL COMMISSION, | |
| Defendant and Appellant, | |
| SUNROAD MARINA PARTNERS, LP, | |
| Real Party in Interest and Respondent. | |

APPEAL from a postjudgment order of the Superior Court of San Diego County, Ronald L. Styn, Judge. Reversed and remanded with directions.

Xavier Becerra, Attorney General, Daniel A. Olivas, Assistant Attorney General, Jamee Jordan Patterson and Hayley Elizabeth Peterson, Deputy Attorneys General, for Plaintiff and Respondent.

Pacific Legal Foundation and Damien M. Schiff as Amici Curiae on behalf of Plaintiff and Respondent.

Thomas A. Russell and Rebecca S. Harrington; Jenkins & Hogin and Christi Hogin, Gregg W. Kettles for Defendant and Appellant.

Nossaman and Steven Harold Kaufmann for Real Party in Interest.

Plaintiff and respondent San Diego Unified Port District (District) unsuccessfully asked defendant and appellant California Coastal Commission (Commission) to certify an amendment of District's port master plan (at times, the amendment) to authorize specified hotel development in the East Harbor Island subarea, including construction of a 175-room hotel by real party in interest Sunroad Marina Partners, LP (Sunroad). District filed a petition for peremptory writ of mandate challenging Commission's denial of certification, and the trial court in January 2017 issued the writ, finding Commission violated provisions of the California Coastal Act of 1976 (at times the Act; Pub. Res. Code,[1] § 30000 et seq.) and "impermissibly set policy" by setting a maximum rental rate or fixing an amount certain for room rental rates. Commission did not appeal that ruling, but reheard District's application and again denied certification, finding the master plan amendment lacked sufficient specificity to adequately protect lower cost visitor and public recreational opportunities, including overnight accommodations. On objections by District and Sunroad, the trial court in August 2017 ruled that Commission had essentially conditioned its certification on the provision of lower cost overnight accommodations, which "infring[ed] on the wide discretion afforded to the District to determine the contents of land use plans and how to implement those plans." The court

_____

[1] Undesignated statutory references are to the Public Resources Code.

2

ruled that Commission had acted in excess of its jurisdiction and did not proceed in the manner required by law.

Commission appeals from the August 2017 postjudgment order. It contends it complied with the writ, but afterwards in the face of Port's and Sunroad's objections the trial court expanded the writ's scope, thereby exceeding its jurisdiction. Commission asks this court to find it complied with the writ as issued, reverse the order sustaining District and Sunroad's objection, and direct the trial court to discharge the writ. Commission further contends it properly denied District's proposed amendment on remand, arguing: (1) substantial evidence supports its finding the proposed amendment does not conform to the Act's policies; (2) Commission, not District, has the ultimate authority to decide whether a proposed amendment is consistent with the Act; and (3) Commission did not set hotel rates in violation of the Act.

In this context, we narrowly review the correctness of the trial court's postjudgment ruling that Commission exceeded its jurisdiction or acted contrary to law in denying certification of District's proposed master plan amendment. Doing so, we hold the court erred by relying in part on provisions of the Act governing a local government's authority and imposing limits on Commission's jurisdiction with respect to local coastal programs, which do not pertain to port master plans or master plan amendments. We further conclude the lower court engaged in an impermissibly broad interpretation of a provision of the Act barring Commission from modifying a master plan amendment as a condition of certification. (§ 30714.) We reverse the order and direct the trial court to discharge the writ of mandate and enter judgment in Commission's favor.

3

FACTUAL AND PROCEDURAL BACKGROUND

In 2015, District submitted to Commission Port Master Plan Amendment No. PMP-6-PSD-14-003-2 (the amendment) for certain development on the East Harbor Island subarea. The amendment proposed to revise District's existing master plan, which had allowed for a single 500-room hotel, to permit development of a 175-room hotel by Sunroad as well as up to two additional hotels with a total of 325 rooms, for a combined total of 500 rooms. About a year earlier, District submitted this proposed amendment but withdrew it after Commission staff recommended Commission deny certification due to "inconsistency with the public access and recreation policies of the Coastal Act that protect and encourage lower-cost visitor and public recreational opportunities." Specifically, Commission staff had observed the proposal did not include any specific requirement for the provision of lower cost accommodations; it did not "include policy language that either reserves a portion of this subarea for lower cost hotel units or identifies an alternative location where such lower cost accommodations will be developed to which . . . in-lieu fees may apply."[2] Commission staff concluded the proposal did not meet the requirements of section 30213 of the Act, providing in part that lower cost visitor and recreational facilities "shall be protected, encouraged, and, where feasible, provided."

_____

[2] An "in-lieu fee" generally refers to any fee paid toward mitigating impacts associated with a particular development. (See, e.g., § 30607.8, subd. (c) [defining an in-lieu fee for purposes of that section as "any fee paid as a condition for issuance of a coastal development permit to mitigate impacts associated with the development of lower cost coastal visitor-serving projects"].)

4

After District resubmitted the amendment in 2015, Commission staff again recommended denial of certification due to inadequacies with the recreation and lower cost overnight accommodation policies. Commission staff had offered language to include in the amendment that would reserve a portion of the subarea's land, as well as a minimum of 25 percent of the 500 hotel rooms, for lower cost overnight accommodations, but District decided there was inadequate direction from its board to incorporate it into the submittal. Instead, District added a paragraph into its final submittal to address the development of the remaining 325 rooms: "If the District issues a Request for Proposals (RFP) to develop the one or two hotels (up to 325 rooms) on the southwesternmost area of Subarea 23 before the District has completed a lower cost visitor accommodations study, the RFP shall specify that no less than 25 [percent] of the hotel rooms will be midscale or economy, as defined by Smith Travel Research. The developer of the midscale or economy hotel rooms shall be required to include amenities that lower the cost of stay. Examples of amenities that could lower the cost of stay may include the provision of kitchenettes, refrigerators and/or microwaves in guest rooms, it could also include provision of complimentary services such as Wi-Fi, continental breakfast and/or parking. If a hotel is developed at a midscale or economy product, it need not pay the in-lieu fee identified earlier in this precise plan."

Commission staff determined the language was inadequate: "[I]t is unlikely that these [midscale or economy] rooms would be what the Commission considers lower cost overnight accommodations. Based on the Commission's past practice, a lower cost overnight accommodation in the San Diego region would be one whose rate is below

5

approximately $106. Based on Commission staff's research of other midscale and economy hotel chains in the vicinity, it is very unlikely that the market rate of new hotel rooms on the waterfront developed as an economy product—let alone a midscale product—would fall into this category. In addition, the deletion of in-lieu fees should not be considered or permitted without detailed criteria and evidence regarding a project's design to ensure a reduction or deletion in the fee is warranted. In this case, the proposed language is too general to determine whether the midscale/economy hotel rooms and amenities would result in accommodations that are truly lower cost, and would allow build-out of the remainder of the room allocation for the subarea. Full-buildout should not occur until it has been determined that this subarea is not required to accommodate a lower-cost hotel and/or a very low cost option, such as a hostel, through use of in-lieu fee payments and to fulfill the results of [District's] study described below."

According to Commission staff, though District's proposed amendment acknowledged that the hotel developers must contribute a " 'fair share' " of on-site or off-site lower cost visitor accommodations or pay an in-lieu fee based on a study District was to prepare, that study had not been completed, and the "policy language does not establish or identify the number of lower cost units needed to meet public demand, or the potential location and timeframe for development of lower cost accommodations elsewhere within the Port." Commission adopted its staff's findings in its final report. It denied certification of the amendment.

District petitioned for a writ of mandate (Code Civ. Proc., §§ 1085, 1094.5; Pub. Res. Code, § 30801) setting out four causes of action, and Sunroad joined in District's

6

supporting arguments. District asked the court to have Commission rescind its decision and remand District's application to Commission to either hold a new hearing or deem the amendment certified by operation of law. It asked the court to exercise continuing jurisdiction over the matter to ensure Commission complied with the writ and the court's judicial declaration.

In January 2017, the trial court granted the writ as to the second cause of action seeking to compel Commission to vacate its denial based on violations of the Act, finding Commission acted " 'without, or in excess of [its] jurisdiction.' " In part, the court stated it was "not persuaded by the Commission's argument that the Commission did not modify the [amendment] or require the District to accept any language as a condition of certification. By designating $106 as the rate for a 'lower cost overnight accommodation' the Commission set a maximum rental rate and thereby 'fixed an amount certain' for room rental rates necessary for the District to obtain certification of the [amendment] in violation of [sections 30213 and 30714]." The court further ruled Commission "impermissibly set policy" and that, "while [section] 30213 protects, encourages and prefers 'lower cost visitor and recreational facilities' the Commission lacks the authority to determine the precise method by which the District should implement [section] 30213's broad policy objective."[3]

_____

[3] For this part of its ruling, the trial court quoted from *Yost v. Thomas* (1984) 36 Cal.3d 561. Its order states: "Section 30500, subdivision (a) . . . provides that: 'Each local government lying, in whole or in part within the coastal zone shall prepare a local coastal program for that portion of the coastal zone within its jurisdiction.' Section 30500, subdivision (c) makes it clear that: 'The precise content of each local coastal

7

District submitted a proposed judgment granting the peremptory writ and a proposed writ. Commission then objected to the proposed writ on several grounds, including that in preparing the proposed writ, District had relied on section 30512.2, which did not apply to port district master plans; District had included unnecessary language; and District had included a provision going beyond the Court's tentative ruling and statement of decision. The court sustained several of Commission's objections and modified the proposed peremptory writ accordingly.

In March 2017, the court entered judgment granting the peremptory writ of mandate. It issued a writ ordering Commission to vacate its August 2015 action to deny certification of the amendment and to "[n]otice and conduct a new public hearing in accordance with applicable regulations and the California Coastal Act during the May

program shall be determined by the local government, consistent with Section 30501, in full consultation with the commission . . . .' 'The commission shall certify a land use plan, or any amendments thereto, if such commission finds that a land use plan meets the requirements of, and is in conformity with, the policies of Chapter 3. . . .' (§ 30512, subd. (c).) 'The commission's review of a land use plan shall be limited to its administrative determination that the land use plan . . . does, or does not, conform with the [policies of the act] . . . the commission is not authorized by any provision of this division to diminish or abridge the authority of a local government to adopt and establish, by ordinance, the precise content of its land use plan' (§ 30512.2, subd. (a)). 'The commission may only reject zoning ordinances, zoning district maps or other implementing actions on the grounds that they do not conform with, or are inadequate to carry out, the provisions of the certified land use plan.' (§ 30513.) The wording of these and other sections does not suggest preemption of local planning by the state, rather they point to local discretion and autonomy in planning subject to review for conformity to statewide standards. As was noted in *City of Chula Vista v. Superior Court* (1982) 133 Cal.App.3d 472, 488 . . . , 'the Commission in approving or disapproving an LCP does not create or originate any land use rules and regulations. It can approve or disapprove but it cannot itself draft any part of the coastal plan.' " The court concluded: "As applied to this case, while [section] 30213 protects, encourages and prefers 'lower cost visitor and recreational facilities' the Commission lacks the authority to determine the precise method by which the District should implement [section] 30213's broad policy objective."

2017 . . . Commission meeting scheduled to be held in San Diego and, following the hearing, take action on the [amendment] application, without consideration of a requirement to provide overnight accommodations at a rate of $106 [per] night, or any other specific rate, as a means of establishing 'lower cost overnight accommodations.' " The writ further provided: "Nothing in this writ shall limit or control the discretion legally vested in you." The court retained jurisdiction over the matter "until such time as the court has determined that the . . . Commission has complied with this writ by taking the mandated actions in accordance with the Coastal Act."

On remand, Commission staff sought to reach agreement with District staff regarding lower cost overnight accommodation provisions but District elected not to modify its amendment. Additionally, staff reported that District had discontinued its study on lower cost overnight accommodations, instead passing guidelines that Commission staff stated lacked specific procedures for protecting, encouraging or providing for lower cost overnight visitor accommodations within District and delayed consideration of how such accommodations could be provided. Staff explained: "As proposed, the [amendment] language acknowledges the hotel developer(s) must contribute a 'fair-share' of on-site or off-site lower cost visitor accommodations or pay in in-lieu fee based on a study conducted by the District; however, . . . the study is no longer being pursued by the Port, so it is unclear how these requirements would be implemented. In addition, the language proposed in the [amendment] would be similar to that included in other [amendments] approved by the Commission for other specific hotel project; however, reliance on this language has not resulted in the actual provision of additional

9

lower cost overnight accommodations within the Port. For example, of the existing 8,035 overnight accommodations within the Port, only 3 [percent] are lower cost (237 RV sites at Chula Vista RV Resort). There is an increasing need for lower cost overnight accommodations within the Port in the form of a specific program that will result in units as opposed to deferred collection of in-lieu fees."[4] Further, staff found it unlikely any new hotel developed as an economy or mid-scale product would be lower cost given the "prime location" of the subject subarea: "In order for overnight accommodations on East

_____

[4] Staff found District had misstated the number of rooms that would be developed as "midscale or economy" rooms; that only 82 of 325 rooms would be designated for such development, and District's actual proposal was that any hotel developed as midscale or economy would not need to pay in-lieu fees. Staff additionally found the Smith Travel Research definition used by District was unclear; it had not specified which standard its proposed language was based on and what it meant: "The ambiguity of the proposed language is confusing and the [proposed master plan] should include more specifically defined terms. The [amendment] also requires the provision of 'amenities' to lower the cost of stay, but it does not specify the extent of amenities that would be required. Thus, these mid-scale rooms could include a microwave and free wifi as amenities, and still comply with the proposed [amendment]. While [District] may have intended for its submittal to adequately provide lower cost accommodations at the Port, as drafted, it could be construed as laid out above, resulting in the construction of only higher cost rooms. Thus, the proposed [amendment] fails to protect or provide lower cost overnight accommodations." Staff stated: "The Commission acknowledges that mid-price hotels may serve as a part of the overall effort to address the need for more affordable accommodations within the Port because they are typically less costly or are more reasonably priced for larger groups and families; however, the focus for any future resumption of the study should be the protection and provision of new lower cost accommodations that all economic segments of the population can afford to use, including hostels, tent camping, cabins/yurts, and low cost hotels/motels (e.g., budget hotels with the lowest average room rates). Thus, any future study should provide a goal specifically related to providing lower cost accommodations that is distinguishable from the goal for moderate cost overnight accommodations and include analysis of how this goal is consistent with the Public Trust Doctrine and the Coastal Act."

10

Harbor Island to be lower cost, and maintained as such, they would need to be a type of development that is designed in such a manner to be intrinsically lower cost."

Staff stated that while the Act emphasized the need to protect and provide public access and lower cost visitor and recreational facilities, the proposed amendment "does not include any specific requirement for the provision of lower cost accommodations on-site or in the subarea and does not meet the requirements of [s]ection 30213." Nor did it contain an in-lieu fee for the remaining 325 rooms if developed as mid-scale or economy to mitigate the loss of public trust lands that could otherwise be used for lower cost accommodations. Staff stated "that the proposed Port Master Plan amendment, as submitted, does not conform to the provisions of Section 30711 of the Coastal Act. The proposed changes in land use do not contain sufficient detail in the [port master plan] submittal for the Commission to make a determination of the proposed amendment's consistency with Sections 30210, 30211, and 30213 of the Coastal Act." Staff again recommended certification be denied in part on grounds the amendment "does not conform with or carry out the policies of Chapter 3 and Chapter 8 of the Coastal Act."

Commission held a new public hearing, which took place in May 2017. At the hearing, a District representative agreed to include in the amendment a provision that the hotel developer pay an in-lieu mitigation fee of $41,020 per room for 25 percent of all 500 hotel rooms and the Port would include in its future master plan update a plan to address "lower cost facilities including overnight accommodations." Accounting for that agreement, the commissioners nevertheless unanimously voted to deny certification. Observing that the current level of low-cost visitor accommodations within District was

11

only about 3 percent, the commissioners urged that Commission, as the trustee of public trust lands, not accept money in exchange for overnight housing, but instead ensure that the plan "delineate[ ] numbers of what rooms can be low cost" and "actually provide overnight accommodations that are affordable for people."

In June 2017, Commission filed a return to the peremptory petition for writ of mandate, stating that it had denied certification of the amendment. It "found that the [amendment] does not conform with or carry out the Chapter 3 and Chapter 8 policies of the Coastal Act." The return further states: "As directed by the Court, the Commission did not consider a requirement to provide overnight accommodations at a rate of $106 [per] night or any other specific rate." Commission asserted it had fully complied with the writ issued by the court, and requested that it be discharged.

District objected and moved to set aside Commission's return and again remand the matter to Commission to comply with the writ. It argued Commission had exceeded its jurisdiction and violated the Act, as reflected by commentary of some of the commissioners during the May 2017 hearing, by making a "specific policy of lower cost overnight accommodations . . . dispositive in voting on [the amendment]." More specifically, District objected that Commission "demand[ed] a specific policy (a land set aside for low-cost overnight accommodations over public recreational facilities) and . . . articulat[ed] how that policy must be carried out (must designate 25 [percent] of new hotel rooms to be provided at lower cost—hostel, yurts, cabins and camping) . . . ." It characterized Commission's jurisdictional role in reviewing master plan amendments as "limited" by section 30714, which states that Commission may not

12

modify a plan as submitted as a condition of certification, and section 30512.2, which prohibited Commission from diminishing or abridging a local government's authority to "adopt and establish, by ordinance, the precise content of its land use plan." District also objected that Commission interpreted the writ as merely prohibiting it from mentioning dollar figures as a technicality; that by its actions Commission engaged in "specific policy making" and it attempted to indirectly set room rates. Sunroad joined in the objections and motion.

In August 2017, the trial court sustained the objections of District and Sunroad and granted the motion to set aside Commission's action. The court found Commission had satisfied the writ's directive not to consider a requirement to provide overnight accommodations at a $106 rate or any other specific rate as a means of establishing lower cost overnight accommodations. However, it ruled that Commission nevertheless acted in excess of its jurisdiction and did not proceed in the manner required by law when it again denied certification. In part, the court found Commission was "in essence, requiring that the [amendment] include a provision for 'lower-cost overnight visitor servicing accommodations' as a condition of certification" and in that way Commission "infringe[d] on the wide discretion afforded to the District to determine the contents of land use plans and how to implement these plans." The court issued another peremptory writ of mandate, commanding Commission to vacate its May 2017 action denying certification, to conduct a new public hearing in accordance with applicable regulations and the Act, and to take action on the amendment application "in compliance with the

13

Coastal Act and consistent with the court's prior rulings in this case." The writ again provides: "Nothing in this writ shall limit or control the discretion legally vested in you."

Commission filed this appeal from the trial court's August 2017 order after judgment.[5]

## DISCUSSION

Commission presents two issues: First, it contends the lower court exceeded its jurisdiction when it found Commission had failed to comply with the writ. According to Commission, in reaching this ruling, the court enforced portions of the writ it had previously struck as beyond the scope of its decision in response to Commission's objections, and thus the court "improperly expanded the scope of the judgment and writ."

---

[5] While this appeal was pending, this court granted an application of the San Diego Port Tenants Association and Pacific Legal Foundation to file an amicus curiae brief on behalf of District. Amici contend that in denying certification, Commission imposed a condition lacking an essential nexus to the impacts of the proposed hotel development, and thus its action amounts to an unconstitutional exaction under *Nollan v. California Coastal Commission* (1987) 483 U.S. 825 and *Dolan v. City of Tigard* (1994) 512 U.S. 374. We have considered the amicus brief, as well as Commission's answer to that brief, in determining the issues presented on appeal. Because Commission did not conditionally approve certification or otherwise impose a permit condition on private land (*City of Perris v. Stamper* (2016) 1 Cal.5th 576, 591), the arguments lack merit. (See also *California Building Industry Assn. v. City of San Jose* (2015) 61Cal.4th 435, 461 [municipality's inclusionary housing ordinance was not an exaction as it did not require the developer to dedicate any portion of its property to the public or pay any money to the public].) They are not ripe in any event. (*Sierra Club v. California Coastal Commission* (1993) 12 Cal.App.4th 602, 618 [takings decisions must await as-applied challenges and are usually not ripe until the permit stage; regulatory takings claims generally require final administrative action as to specific land]; see *Gherini v. California Coastal Commission* (1988) 204 Cal.App.3d 699, 713 [mere adoption of a general plan does not constitute a taking; enactment of a zoning regulation or land use plan not sufficiently definite or final to support such a claim].)

14

Commission relies on *Craven v. Crout* (1985) 163 Cal.App.3d 779, holding a court loses power to change a previously-entered judgment. Commission maintains that if we find it complied with the writ "as issued," we should reverse the order and direct the trial court to discharge the writ.

Second, Commission contends it properly denied certification of the amendment on remand. It maintains substantial evidence supports its decision that the amendment does not conform to the Act's Chapter 3 policies, including section 30213, and specifically its finding that the amendment lacked sufficient specificity to adequately protect, encourage or provide lower cost visitor and public recreational facilities, including lower cost overnight accommodations, and was inconsistent with the public access and recreation policies of the Act. Commission maintains it is its role, not District's, to exercise discretion to determine whether an amendment meets the Act's standards, based on cases such as *City of Chula Vista v. Superior Court* (1982) 133 Cal.App.3d 472 (*City of Chula Vista*) and *City of Malibu v. California Coastal Commission* (2004) 121 Cal.App.4th 989, which hold Commission may use its independent judgment and expertise to implement the Act's policies.

Because Commission's latter points have merit, we do not reach its contentions regarding the trial court's asserted overreach in jurisdiction. (See *Burke v. California Coastal Commission* (2008) 168 Cal.App.4th 1098, 1109.)

## I. *Standard of Review*

The parties dispute in some respects the pertinent standard of review. Commission argues the question at hand is not whether the trial court erred but whether

15

substantial evidence supports its decision on remand to deny certification. Citing *Ross v. California Coastal Commission* (2011) 199 Cal.App.4th 900, it argues this court undertakes the same role as that of the trial court: to examine the entire record, and presume Commission's decision is supported by substantial evidence unless District or Sunroad show there is no support for its findings. Commission maintains we may reverse only if a reasonable person would not have reached the conclusions made by it based on the evidence before it. Further, Commission maintains this court must defer, and give great weight, to its interpretation of the controlling statutes and regulations.

District and Sunroad point out that because Commission did not appeal from the court's January 2017 decision to grant the writ, it has waived its right to appeal from that judgment or the writ's directives. (*Los Angeles Internat. Charter High School v. Los Angeles Unified School District* (2012) 209 Cal.App.4th 1348, 1354.) They are correct that the validity of the first March 2017 writ is not before us. (*Brown v. California Unemployment Insurance Appeals Board* (2018) 20 Cal.App.5th 1107, 1114; *City of Carmel-by-the-Sea v. Board of Supervisors of Monterey County* (1982) 137 Cal.App.3d 964, 970-971.) But following Commission's return and the hearing on respondents' objections, the trial court issued the same directive in a new writ: to take action on District's master plan amendment application "in compliance with the Coastal Act . . . ."[6] The court's order following the hearing into the adequacy of Commission's return on the

---

6    It also directed Commission to act "consistent with the court's prior rulings in this case." But the court found Commission had complied with its directive not to consider specific rental rates.

16

writ is appealable as an order enforcing the judgment. (*Los Angeles Internat. Charter High School v. Los Angeles Unified School District*, at pp. 1354-1355.)

Thus, in these proceedings we review the trial court's order under section 1097 of the Code of Civil Procedure, which permits the court to "make any orders necessary and proper for the complete enforcement of the writ." (Code Civ. Proc., § 1097.) The question on appeal is whether the trial court erred by concluding Commission had failed to comply with the writ in denying certification of District's amendment. (See *Brown v. California Unemployment Insurance Appeals Board*, *supra*, 20 Cal.App.5th at p. 1114; *Robles v. Employment Development Department* (2015) 236 Cal.App.4th 530, 546; *Los Angeles Internat. Charter High School v. Los Angeles Unified School District*, *supra*, 209 Cal.App.4th 1355; *City of Carmel-by-the-Sea v. Board of Supervisors of Monterey County*, *supra*, 137 Cal.App.3d 964, 971-971.) Our focus is still on Commission's response to the writ and the trial court's assessment of that response. (*Robles*, at p. 546; *City of Carmel*, at p. 972.) The analysis necessarily entails an inquiry into whether Commission's decision has evidentiary support (*Los Angeles Internat. Charter High School*, at p. 1355 [involving an appeal from an order discharging a writ; appellate court "will uphold the [District's facilities] decision unless it is devoid of evidentiary support"]) and, as District appears to acknowledge, also an inquiry into whether the trial court correctly concluded that Commission had again exceeded its jurisdiction or otherwise did not proceed in a manner required by law. We reject District's contention that Commission waived its right to raise issues concerning its statutory jurisdiction under the Act by failing to appeal from the March 2017 judgment.

17

" 'When the determination of an agency's jurisdiction involves a question of statutory interpretation, "the issue of whether the agency proceeded in excess of its jurisdiction is a question of law." ' " (*Citizens v. A Better Eureka v. California Coastal Commission* (2011) 196 Cal.App.4th 1577, 1583.) " '[C]ourts do not defer to an agency's determination when deciding whether the agency's action lies within the scope of authority delegated to it by the Legislature.' " (*Ibid*., quoting *Burke v. California Coastal Commission*, *supra*, 168 Cal.App.4th at p. 1106; *Security National Guaranty*, *Inc. v. California Coastal Commission* (2008) 159 Cal.App.4th 402, 414.) Throughout this analysis, we consider issues of statutory interpretation de novo. (*Brown v. California Unemployment Insurance Appeals Board*, *supra*, 20 Cal.App.5th at p. 1114; *Robles v. Employment Development Department*, *supra*, 236 Cal.App.4th at p. 546; *City of Dana Point v. California Coastal Commission* (2013) 217 Cal.App.4th 170, 187.)

II. *The Coastal Act and Port Master Plans*

The Coastal Act is a " 'comprehensive scheme to govern land use planning for the entire coastal zone of California.' " (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 793; *Yost v. Thomas* (1984) 36 Cal.3d 561, 565.) It is "beyond dispute that California has a legitimate interest in protecting and maintaining its beaches as recreational resources." (*Ocean Harbor House Homeowners Association v. California Coastal Commission* (2008) 163 Cal.App.4th 215, 231.) Accordingly, a core principle of the Act is to maximize public access to and along the coast as well as recreational opportunities in the coastal zone. (§ 30001.5, subd. (c); *Yost*, at pp. 565-566; *City of Dana Point v. California Coastal Commission*, *supra*, 217

18

Cal.App.4th at p. 185; *Ocean Harbor House*, at p. 231; *LT-WR, L.L.C. v. California Coastal Commission* (2007) 151 Cal.App.4th 427, 806.) The Legislature further "sought to '[a]ssure orderly, balanced utilization and conservation of coastal zone resources *taking into account the social and economic needs of the people of the state*.' " (*Carstens v. California Coastal Commission* (1986) 182 Cal.App.3d 277, 290, quoting § 30001.5, subd. (b).) Underlying the Act's goals are the Legislature's findings that " ' "the California coastal zone is a distinct and valuable natural resource of vital and enduring interest to all the people"; that "the permanent protection of the state's natural and scenic resources is a paramount concern"; that "it is necessary to protect the ecological balance of the coastal zone"; and that "existing developed uses, and future developments that are carefully planned and developed consistent with the policies of this division, are essential to the economic and social well-being of the people of this state . . . ." ' " (*Pacific Palisades Bowl Mobile Estates*, at p. 793.) The Commission is to resolve conflicts in the Act's policies "in a manner which on balance is the most protective of significant coastal resources." (§ 30007.5; *Carstens*, at p. 290.)

The Act "shall be liberally construed to accomplish its purposes and objectives." (§ 30009; *Sierra Club v. California Coastal Commission* (2005) 35 Cal.4th 839, 849 (*Sierra Club*); *Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles*, *supra*, 55 Cal.4th at pp. 793-794; *Burke v. California Coastal Commission*, *supra*, 168 Cal.App.4th at p. 1108) and "any exception to the statute's main purpose must be strictly construed." (*Burke*, at p. 1108.) Commission, "unless specifically otherwise provided, shall have the primary responsibility for the implementation" of the Act's provisions and

"is designated as the state coastal zone planning and management agency for any and all purposes . . . ." (§ 30330; see *Marine Forests Soc. v. California Coastal Commission* (2005) 36 Cal.4th 1, 20.) Thus, "[t]he Commission has the ultimate authority to ensure that coastal development conforms to the policies embodied in the state's Coastal Act." (*City of Dana Point v. California Coastal Commission*, *supra*, 217 Cal.App.4th at p. 186.) And, a " 'fundamental purpose of the Coastal Act is to ensure that state policies prevail over the concerns of local government.' " (*Pacific Palisades Bowl Mobile Estates*, at p. 794; *City of Dana Point*, at p. 186.)

Chapter 3 of the Act sets out coastal resources planning and management policies, which "shall constitute the standards by which the . . . permissibility of proposed developments subject to the provisions of this division are determined." (§ 30200; see *Sierra Club*, *supra*, 35 Cal.4th at p. 849.) One such policy is that "maximum access . . . and recreational opportunities shall be provided for all the people consistent with . . . the need to protect public rights, rights of private property owners, and natural resource areas from overuse." (§ 30210.) "Development shall not interfere with the public's right of access to the sea where acquired through use or legislative authorization . . . ." (§ 30211.)

Chapter 3 also includes section 30213, at issue here, which provides: "Lower cost visitor and recreational facilities shall be protected, encouraged, and, where feasible, provided. Developments providing public recreational opportunities are preferred." That section further states: "The commission shall not (1) require that overnight room rentals be fixed at an amount certain for any privately owned and operated hotel, motel or other similar visitor-serving facility located on either public or private lands; or (2) establish or

20

approve any method for the identification of low or moderate income persons for the purpose of determining eligibility for overnight room rentals in any such facilities." (§ 30213.)[7] "The use of private lands suitable for visitor-serving commercial recreational facilities designed to enhance public opportunities for coastal recreation shall have priority over private residential, general industrial, or general commercial development, but not over agriculture or coastal-dependent industry." (§ 30222.)

---

[7] Sunroad has moved in this court for judicial notice of a 2016 minute order in an unrelated case, *San Diego Navy Broadway Complex Coalition v. San Diego Unified Port District* (*Sunroad*) (Super. Ct. S.D. County, 2016, No. 37-2014-00009407-CU-TT-CTL), in which another San Diego Superior Court judge rejected a challenge to District's decision to certify an environmental impact report (EIR) for the same master plan amendment. Sunroad argues this decision is relevant to the procedural history of District's master plan amendment at issue, the length of time the amendment has been pending unresolved and efforts of respondents to complete the CEQA and administrative process. Sunroad states its counsel made reference to this decision in discussing the legislative history of section 30213 of the Act at the July 2014 hearing before Commission on the amendment, but that the findings were not included in the administrative record. Sunroad's arguments concerning the 2016 minute order related to the EIR do not convince us that the *San Diego Navy Broadway Complex Coalition* order is relevant to whether the trial judge in this case correctly decided Commission either exceeded its jurisdiction or acted in a manner contrary to law in connection with its 2017 decision to again deny certification of the amendment. Sunroad also asks this court to judicially notice 1981 revised findings of Commission in approving a 300-unit hotel in Marina Del Ray. But Sunroad does not establish that these Commission findings are in fact included within the legislative history of section 30214, that is, that they were matters available to and presumably reviewed by the Legislature when adoption of those statutes was under consideration. (See *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45, fn. 9.) Even if it did, it has not argued the statute's words are ambiguous or unclear such that extrinsic aids to interpretation are necessary. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562; *Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 507-508 [court is precluded from considering legislative history where statutory language is unambiguous]; *Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1979.) We deny Sunroad's request.

21

The Act's public access policies "shall be implemented in a manner that takes into account the need to regulate the time, place, *and manner* of public access depending on the facts and circumstances in each case . . . ." (§ 30214. subd. (a), italics added.) This implementation provision, section 30214, contains an express declaration of legislative intent: "It is the intent of the Legislature that the public access policies of this article be carried out in a reasonable manner that considers the equities and that balances the rights of the individual property owner with the public's constitutional right of access pursuant to Section 4 of Article X of the California Constitution. Nothing in this section or any amendment thereto shall be construed as a limitation on the rights guaranteed to the public under [the aforementioned constitutional provision]." (§ 30214, subd. (b).)[8] It further specifies mandatory considerations for Commission's implementation authority: "In carrying out the public access policies of this article, the commission and any other responsible public agency shall consider and encourage the utilization of innovative access management techniques . . . . " (§ 30214, subd. (c).)

Chapter 8 of the Act governs California ports and port district master plans. (§§ 30700, 30711.) Section 30708 provides: "All port-related developments shall be located, designed, and constructed so as to: . . . Provide for other beneficial uses

---

[8]     Article X, section 4 of the California Constitution provides: "No individual, partnership, or corporation, claiming or possessing the frontage or tidal lands of a harbor, bay, inlet, estuary, or other navigable water in this State, shall be permitted to exclude the right of way to such water whenever it is required for any public purpose, nor to destroy or obstruct the free navigation of such water; and the Legislature shall enact such laws as will give the most liberal construction to this provision, so that access to the navigable waters of this State shall be always attainable for the people thereof."

22

consistent with the public trust, including, but not limited to, recreation . . . , to the extent feasible." (§ 30708, subd. (d).) Each port governing body must prepare and adopt a port master plan with public participation and submit it for certification by Commission. (§§ 30711, 30712, 30714.) The port master plan must describe development projects subject to section 30715 "in sufficient detail to be able to determine their consistency with the policies of Chapter 3 . . . ." (§ 30711, subd. (a)(4).) The plan also "shall contain information in sufficient detail to allow the commission to determine its adequacy and conformity with the applicable policies of this division." (§ 30711, subd. (b).) Port master plan amendments are submitted and processed for certification in the same manner as the original master plan. (§ 30716, subd. (a).)[9]

When a port governing body submits a plan amendment for certification, Commission within 90 days "shall certify the plan or portion of a plan and reject any portion of a plan which is not certified" and it "may not modify the plan as submitted as a condition of certification." (§ 30714.) If Commission rejects a plan, it must base the rejection on written findings of fact and conclusions of law. (*Ibid.*) If it takes no action within 90 days, the plan is deemed certified. (*Ibid.*) "The commission shall certify the plan, or portion of a plan, if the commission finds both of the following: [¶] (a) The

---

[9]    "The commission shall approve a port master plan only if the commission finds that sufficient information has been submitted to allow the commission to determine the adequacy and conformity of the proposed plan(s) with the applicable policies of the California Coastal Act of 1976, pursuant to the requirements of Public Resources Code, Section 30711 and of Section 13625 of these regulations, and that the master plan fulfills the requirements of . . . Section 30714(a) and (b)." (Cal. Code Regs., tit. 14, § 13632, subd. (d).)

23

master plan, or certified portions thereof, conforms with and carries out the policies of this chapter. [¶] (b) Where a master plan, or certified portions thereof, provide for any of the developments listed as appealable in Section 30715, the development or developments are in conformity with all of the policies of Chapter 3 . . . ." (*Ibid.*) Once Commission certifies a master plan, the Act delegates authority over coastal development permits for new development to the appropriate port governing body, except that approvals of certain development may be appealed to Commission. (§ 30715, subd. (a).)

The Act grants appellate jurisdiction to Commission over port district approvals of hotel and motel development in connection with a port district master plan or master plan amendments. (§ 30715.) The port district governing bodies "shall inform and advise the commission in the planning and design of appealable developments authorized" under Chapter 8, and notify Commission as to how a proposed hotel or motel development is "consistent with the applicable port master plan and this division." (§ 30717.) Thereafter, a port district's approval of such a development becomes effective unless an appeal is filed with Commission within a short time period. (*Ibid.*)

III. *The Court Erred by Relying on Standards Relating to Local Coastal Programs and the Discretion Accorded Local Governments in Establishing, Creating and Implementing Land Use Plans*

We first address a main premise of the trial court's conclusion that Commission exceeded its jurisdiction and failed to proceed in a manner required by law. District and Sunroad have adopted much of the court's underlying reasoning on appeal. Citing *Yost v. Thomas*, *supra*, 36 Cal.3d 561, *City of Malibu v. California Coastal Commission* (2012)

24

206 Cal.App.4th 549 and *Schneider v. California Coastal Commission* (2006) 140 Cal.App.4th 1339, the trial court found Commission had imposed conditions on District for certification, and thereby "infringe[d] on the wide discretion afforded to the District to determine the contents of land use plans and how to implement these plans."

None of the cited cases, however, involve a port district's authority; all deal with a local coastal program (LCP), which the Act requires every "local government" within the coastal zone to prepare. (§ 30500; *Yost v. Thomas*, *supra*, 36 Cal.3d at p. 567 [city of Santa Barbara]; *City of Malibu v. California Coastal Commission*, *supra*, 206 Cal.App.4th at pp. 552, 554 [Malibu]; *Schneider v. California Coastal Commission*, *supra*, 140 Cal.App.4th at pp. 1342, 1346 [county of San Luis Obispo].) A "local government," is specifically defined by the Act as a "chartered or general law city, charter or general law county, or any city and county." (§ 30109.) The California Supreme Court in *Yost v. Thomas* did not address the scope of Commission's authority in the port master plan context; it held the Act did not preclude a referendum on a city council's approval of a hotel conference center development (a general plan amendment, specific plan, rezoning, parking modifications and a development plan sought by the respondent, a private corporation) within the coastal zone. (*Yost v. Thomas*, at pp. 564, 565, 567, 569.) The city was acting under the land use plan portion of its LCP that had been approved by Commission. (*Id.* at p. 564.) Though the high court held the city council's actions were legislative (*id.* at p. 570), the respondent argued the acts became administrative because the land was in a coastal zone subject to the Act's requirement that local governments develop land use plans, and thus the city council became an agency of

25

the state in enacting all land use policies. (*Id*. at p. 571.) The high court rejected that argument, basing its ruling on the Act's provisions governing LCP's (§§ 30500, subds. (a), (c), 30512, subd. (c), 30512.2, subd. (a), 30513[10]) granting discretion to local governments: "Under the act, local governments . . . have discretion to zone one piece of land to fit any of the acceptable uses under the policies of the act, but they also have the discretion to be more restrictive than the act. The Coastal Act sets minimum standards and policies with which local governments within the coastal zone must comply; it does not mandate the action to be taken by a local government in implementing local land use controls. The Commission performs a judicial function when it reviews a local government's LCP—it determines whether the LCP meets the minimum standards of the act [citation], but once an LCP has been approved by the Commission, a local government has discretion to choose what action to take to implement its LCP: it can decide to be more restrictive with respect to any parcel of land, provided such restrictions do not conflict with the act. [¶] The act, therefore, leaves wide discretion to a local government not only to determine the contents of its land use plans, but to choose how to implement these plans. Under such circumstances a city is acting legislatively and its actions are subject to the normal referendum procedure." (*Yost*, at pp. 572-573, fn. omitted.) "*Yost* [*v. Thomas*] stands for nothing more than that a city's actions in implementing the LCP retain their legislative nature for the purposes of referendum. That does not mean that, once the LCP is certified, it becomes a matter of local law. The

---

10    See footnote 3, *ante*.

city's actions in implementing the LCP, as well as any coastal development permit issued by the city, are still subject to Commission review." (*Charles A. Pratt Construction Co., Inc. v. California Coastal Commission* (2008) 162 Cal.App.4th 1068, 1076.)

In *City of Malibu v. California Coastal Commission*, the appellate court held Commission had acted in excess of its jurisdiction by approving amendments to a city's certified LCP that had been proposed by a state conservancy authority over the city's objection. (*City of Malibu v. California Coastal Commission*, *supra*, 206 Cal.App.4th at p. 552.) Commission sought to authorize its action under section 30515, providing that Commission could override a city's refusal to amend its LCP but only where the amendment was sought for "the development of a public works project or energy facility that would meet the public needs of an area greater than that encompassed in the local coastal program that were not anticipated when the LCP was certified." (*City of Malibu*, at p. 564.) The appellate court observed the conservancy's amendment sought to override the city's local land use plans and policies, and substitute new ones so that it could avoid having to ask Commission for coastal development permits. (*Id*. at pp. 559-560.) It held Commission's action contradicted the express legislative limitation in section 30512.2, subdivision (a) preventing it from " 'diminish[ing] or abridge[ing] the authority of a local government' as to 'the precise content of its land use plan.' " (*Id*. at p. 564.)

In *Schneider v. California Coastal Commission*, the appellate court addressed Commission's decision to impose special conditions on a coastal development permit, in part based on a finding the proposed development would be visible from the ocean.

27

(*Schneider v. California Coastal Commission*, *supra*, 140 Cal.App.4th at pp. 1342.) The court pointed out that after Commission certifies an LCP, development review authority is delegated to the local government (*id.* at p. 1344, citing in part § 30519, subd. (a)), and that on review of a development permit Commission's jurisdiction is limited to deciding whether the locally approved development does not conform to the standards of a certified LCP or the Act's access policies. (*Id.* at pp. 1344-1345.) It held Commission in construing the relevant provision of the Act (§ 30251) had added words (*id.* at p. 1345), and its adoption of an unwritten policy for the County of San Luis Obispo to protect scenic views from offshore, ocean-based vantage points was unsupported by either the language of the Act or the county's LCP. (*Id.* at p. 1348.) Citing *Yost v. Thomas*, *supra*, 36 Cal.3d at p. 572 and *City of Chula Vista*, *supra*, 133 Cal.App.3d at p. 488, the court stated: "When Coastal Commission certified the LCP in 1988, it lacked authority ' "to create or originate any land use rules and regulations" ' or draft any part of the coastal plan. [Citations.] In reviewing the proposed development to determine whether it was consistent with the certified LCP, Coastal Commission was not empowered to adopt a new offshore visual resource policy for San Luis Obispo County. [Citation.] 'Administrative action that is not authorized by, or is inconsistent with, acts of the Legislature is void.' " (*Schneider v. California Coastal Commission*, 140 Cal.App.4th at p. 1348.)

The broad land-use implementation and policy-making jurisdiction discussed in these cases is that granted to a specified city or county; the Act requires only a local government entity within the coastal zone to prepare an LCP, with an accompanying land

28

use plan and implementing ordinances. (*Landgate, Inc. v. California Coastal Commission* (1998) 17 Cal.4th 1006, 1010-1011.) Though District is an independent governmental entity existing under state law (*Rider v. City of San Diego* (1998) 18 Cal.4th 1035, 1039-1040), neither District nor Sunroad cite authority for the proposition that it falls within the specifically defined category of a local government such that the limitations on Commission's authority with respect to LCP's apply. The provisions governing LCP's and the express limits imposed on Commission's jurisdiction with regard to development under an LCP—prohibiting Commission from determining the "precise content" of a land use plan (§§ 30500, subd. (c); 30512.2, subd. (a)), creating land use regulations, or drafting coastal plans (*City of Chula Vista*, *supra*, 133 Cal.App.3d 472, 488)—have no application to District, or District's master plan, which is governed by a different statutory scheme within the Act. We decline to rewrite the law so as to extend those statutory restrictions on Commission's jurisdiction over LCP's to port district master plans governed by Chapter 8 of the Act.

On appeal, District cites the LCP-related authorities (*Yost v. Thomas*, *supra*, 36 Cal.3d 561; *City of Malibu v. California Coastal Commission*, *supra*, 206 Cal.App.4th 549) to argue that Commission lacks authority under the Act to require lower cost overnight accommodations in connection with its proposed master plan amendment. District seeks to extend these authorities to it as a "legislative body" so as to show it has wide discretion to formulate "land use plans like the port master plan" and to " 'determine how to implement' certified plans. At the same time, District appears to concede that the provisions governing LCP's do not apply to it; it maintains it brought the LCP-related

29

limitations on Commission's authority to the trial court's attention only "to reinforce the non-legislative role of this executive branch agency." District contends, however, that the provisions of the Act related to port master plans and master plan amendments impose *greater constraints* on Commission's discretion and authority than do the Act's provisions for LCP's; it argues Commission is making merely "semantic" distinctions between the LCP limitations on Commission's role and port master plan limitations. According to District, section 30714 of the Act "expressly prohibits [Commission] engaging in developing policy suggestions to port master plans" and from requiring District to provide low cost overnight accommodations. As we explain more fully below, we disagree with District's characterization or interpretation of the master plan provisions of the Act and the extent of the limits on Commission's jurisdiction or authority in implementing the Act and its policies.

Sunroad, for its part, argues Commission in reconsidering District's proposed amendment "did exactly the same thing" that the trial court in January 2017 found improper. That is, Sunroad argues, Commission assertedly "sought to regulate rental rates anyway through the backdoor, in violation of [s]ection 30213 and the court's ruling, when it found . . . that the [amendment] failed to provide 'intrinsically lower cost' accommodations such as 'hostels, tent camping, cabins/yurts, and low cost hotels/motels (e.g. budget hotels with the lowest average room rates.[)]' " Sunroad argues Commission merely used a euphemism for describing accommodations expected to charge less than $106 per night, and was an act by Commission that " 'impermissibly set policy . . . .' "

The trial court in assessing Commission's compliance with the writ, however, determined that Commission had not impermissibly set room rates, but had complied with the writ's directive not to do so. Narrowly interpreting the statutory exceptions to Commission's broad authority as we must (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles*, *supra*, 55 Cal.4th at p. 796; *Citizens For A Better Eureka v. California Coastal Commission*, *supra*, 196 Cal.App.4th at p. 1586), we agree with the court's reasoning. Nothing in Commission's findings required District to set or fix overnight room rental rates "at an *amount certain*." (§ 30213, italics added.) That Commission identified various types of lower cost accommodations—hostels, tent camping, cabin or yurts, and budget hotels or motels—or used parameters in determining what constitutes a lower cost product, does not violate the prohibition in section 30213 against setting specific monetary rates. A conclusion otherwise would read the words "at an amount certain" out of the statute and render them meaningless, an untenable construction. (*Varshock v. Department of Forestry & Fire Protection* (2011) 194 Cal.App.4th 635, 643, fn. 4 ["Under established rules of statutory construction, we may not 'omit what has been inserted' [citation] or 'render[] a part of a statute meaningless or inoperative' "]; *Trackman v. Kenney* (2010) 187 Cal.App.4th 175, 184.) There is no basis to disturb that aspect of the court's ruling.[11]

---

[11] No party has claimed that Commission sought to "establish or approve any method for the identification of low or moderate income persons for the purpose of determining eligibility for overnight room rentals in any [hotel, motel, or other similar visitor-serving facility]" in violation of section 30213.

31

As for Sunroad's complaint that Commission erred by setting policy, that argument echoes the trial court's erroneous reasoning and those arguments made in the aforementioned cases pertaining to LCP's, in which appellate courts would not permit Commission to usurp the land-use and policy-making functions of cities and counties. (E.g., *City of Malibu v. California Coastal Commission*, *supra*, 206 Cal.App.4th at p. 564 ["The Conservancy's overlay district . . . substitutes the land use policies and development standards of the Conservancy and the . . . Commission for those of the city, in contradiction of the legislative mandate preventing the . . . Commission from 'diminish[ing] or abridg[ing] the authority of a local government' as to 'the precise content of its land use plan.' (§ 30512.2, subd. (a).)"].)

IV. *Commission Did Not Exceed its Jurisdiction in Denying Certification*

The narrow question at hand is whether the trial court correctly found Commission had exceeded its jurisdiction or otherwise acted contrary to law in denying certification on the grounds stated. As indicated, though we review the correctness of the court's reasoning, we address de novo the question of whether Commission's decision was within its authority or jurisdiction under the Act.

In answering this question, we give an "expansive interpretation" (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles*, *supra*, 55 Cal.4th at p. 796) to the Act's public access provisions, and strictly or narrowly construe exceptions to the Act's main purposes. (Accord, *ibid*.; *Citizens For A Better Eureka v. California Coastal Commission*, *supra*, 196 Cal.App.4th at p. 1586.)

32

A. *The Act's Master Plan Provisions Do Not Prohibit Commission from Determining the Scope and Extent of Coastal Policy When Reviewing a Port Master Plan Amendment's Consistency with Those Policies*

This court has previously recognized Commission's broad mandate under the Act relating to planned development and other uses within the coastal zone. (*City of Chula Vista*, *supra*, 133 Cal.App.3d at p. 481 ["Clearly, the statutory mandate is a large order"].) In *City of Chula Vista*, we explained in the context of Commission's review of a city's LCP that Commission "insure[s] continued state coastal planning and management" (*id*. at p. 480) and achieves the Legislature's goals by providing "statewide supervision over coastal zone development, to avoid local pressures having an undue impact upon the planning for this unique and irreplaceable resource . . . ." (*Id*. at p. 481.) In view of the broad legislative goals of the Act (§ 30001.5), Commission's role is to "promulgate[] statewide rules and statewide policies," not merely to act as a "rubber stamp agency" with respect to local planning. (*Id*. at p. 489.) It does this as the statewide entity primarily responsible for implementing the Act and promoting its policies, ensuring they are furthered and carried out. (*Ibid*.) This court pointed out Commission exercises its independent judgment on the issue of a local entity's compliance with coastal policy. (*Ibid*.; see *Gherini v. California Coastal Commission*, *supra*, 204 Cal.App.3d at pp. 709-710.)[12] Commission's broad supervisory role in implementing statewide coastal policy

---

[12]    In *City of Chula Vista*, we addressed a city's argument that Commission had no legislative power with respect to its review of an LCP for conformity with statewide standards, and therefore could decide only whether the city's action was arbitrary and

is particularly important when dealing with a port master plan, the purpose of which is to guide future uses and development within the port district. A master plan is precisely the sort of tool that requires Commission's input and expertise for enforcing and furthering coastal policies, including those dealing with public access and lower cost visitor facilities.

---

capricious. (*City of Chula Vista*, *supra*, 133 Cal.App.3d at p. 488.) We declined to find the scope of Commission's power dictated by the fact local entities were charged with the primary land planning function: "The fact City is the first agency to work on the plan is not determinative of the scope of Commission's powers. . . . Local government is to be included, but statewide standards are to be formulated; local government plans, but a statewide commission reviews. Surely the Legislature did not go to all this trouble to create a statewide rubber stamp agency which does no more than review local legislation for arbitrary and capricious enactments. Rather, it is assumed statewide interests are not always well represented at the local level, and therefore, an agency is needed which promulgates statewide rules and statewide policies." (*Id*. at p. 489.) We rejected the city's argument that Commission may not exercise its independent judgment in reviewing an LCP. (*Id*. at p. 489.) We explained that the fact a city is the first agency to work on an LCP "does not preclude the Commission also having coordinate powers at a later stage in the procedure" and "is not determinative of the scope of Commission's powers." (*Id*. at pp. 488, 489.) We explained in that context that "the entire scheme of the Act provides for the initial planning to be done locally and the final approval to be done by a statewide agency with an eye to statewide policies and limitations. The function of the statewide agency would be trivial and its existence unjustifiable if its function were purely to review City's action for rationality, for conceivable conformity to the state standards rather than actual compliance. *Clearly, the Commission must exercise its independent judgment to decide if such conformity has been achieved because that decision cannot be completely delegated to the local entity where it is likely to be subject to local economic and political pressures which cannot so readily influence the Commission*." (*Id*. at p. 489, italics added.) If Commission is empowered to exercise its independent judgment in the context of an LCP with the attendant limitations on its power to dictate precise land use policies, then certainly Commission may exercise its independent judgment with respect to a port master plan, where its powers with regard to development policy are not so limited. District argues that *City of Chula Vista* merely holds that Commission is relegated to a quasi-judicial function in reviewing consistency with the Act, but this is an overly narrow characterization of its holding.

34

District sees Commission's jurisdiction differently. It characterizes Commission as having a limited statutory role in certifying master plans. District argues the Coastal Act is structured so that "precise policy" originates with a legislative body; that District is charged with creating the policies to implement the Act whereas Commission is an executive branch agency charged only with verifying consistency with the plan and the Act. According to District, section 30714 of the Act "expressly prohibits [Commission from] engaging in developing policy suggestions to port master plans." District challenges Commission's power to articulate how District should carry out the Act's public access policies, arguing Commission lacks authority to "originate policy," require or dictate specific policies and policy choices, or engage in "policymaking." District argues "[t]he California Legislature put the Port District—not Commission—in charge of figuring out how to achieve the Port Act's [*sic*] mission and advance the policies of the Coastal Act." The latter contention is asserted without citation to authority, and on that ground alone we do not consider it. (*In re Michael A.* (2012) 209 Cal.App.4th 661, 668; *Taylor v. Roseville Toyota, Inc.* (2006) 138 Cal.App.4th 994, 1001, fn. 2; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979.)

District's other contentions are a variation of the same erroneous reasoning of the trial court premised on express statutory limits on Commission's authority with respect to a local government's LCP. And District's arguments are not supported by section 30714, which, unlike the LCP provisions of the Act, says nothing about Commission's ability to dictate or suggest the type of visitor facilities and alternatives that would comply with coastal policy. Under the trial court's reasoning, when Commission determined that

35

coastal policy required District to actually provide lower cost overnight accommodations in its master plan amendment and identified the sorts of development meeting that standard, Commission modified the plan as a condition of certification in violation of section 30714. But such a conclusion is based on an impermissibly broad reading of the limit placed on Commission in section 30714, providing it "may not modify the [master] plan as submitted as a condition of certification." Strictly construing that limitation as we must, section 30714 prohibits Commission only from *conditionally approving* a master plan, that is, granting certification subject to a specified modification. To conclude otherwise would prevent Commission from denying certification of a master plan with specific factual and legal findings as to its deficiencies or suggestions for compliance, as any such decision would be construed as an unacceptable conditional approval or modification of the plan in violation of section 30714. Commission did not conditionally approve certification, but denied it on grounds the proposed amendment did not further the Act's public access policies or contain sufficient specificity or detail to permit it to find it complied with those policies, including the Act's mandate that "lower cost visitor . . . facilities *shall* be . . . provided." (§ 30213, italics added.) Commission's suggestions as to how District could meet that mandate did not tell District to amend its plan in any particular way. In denying certification, Commission expressly acknowledged that it was not permitted to make such modifications, but was required to approve or deny the plan amendment as submitted.

Neither the port master plan provisions nor the public access provisions of the Act contain a broad legislative mandate in favor of District's authority over the "precise

36

details" of port master plans; though District's governing body prepares the master plan and Commission may not modify it as submitted as a condition of certification (§ 30714), it ultimately remains Commission's primary role and responsibility as the statewide supervisory agency to implement the Act and ensure a port master plan furthers the Act's policies. (Accord, *City of Chula Vista*, *supra*, 133 Cal.App.3d at p. 481; *Charles A. Pratt Construction Co., Inc. v. California Coastal Commission*, *supra*, 162 Cal.App.4th at pp. 1075-1076.) Commission must certify District's plan or plan amendment with those objectives. (§ 30714.) In doing so, Commission is empowered to not only determine whether a master plan amendment conforms with the Act's policies, but that it *carries out* those policies. (*Ibid.*) It exercises its independent judgment as to whether District's proposed amendment reflects "actual compliance" with state standards and policies. (*Charles A. Pratt*, at pp. 1075-1076; *City of Chula Vista*, *supra*, 133 Cal.App.3d at p. 490.) Commission has a statutory mandate to "consider and encourage the utilization of innovative access management techniques" (§ 30214, subd. (c); see *Surfrider Foundation v. California Coastal Commission* (1994) 26 Cal.App.4th 151, 158, fn. 2), and account for "the need to regulate the . . . *manner* of public access" on a case-by-case basis (§ 30214, subd. (a)). It is permitted to "tak[e] into account the social and economic needs of the people of the state" (§ 30001.5, subd. (b)) and "ensure that state policies prevail" over local concerns. (See *Pacific Palisades Bowl Mobile Estates*, *LLC v. City of Los Angeles*, *supra*, 55 Cal.4th at p. 794; *City of Dana Point v. California Coastal Commission*, *supra*, 217 Cal.App.4th at p. 186.)

Commission exercised this permissible function in deciding whether the proposed port master plan amendment complied with and carried out section 30213 without actually providing lower cost overnight accommodations such as hostels, cabins, campgrounds or budget motels. With respect to "lower cost visitor and recreational facilities," section 30213 is unambiguously mandatory: Such facilities "*shall be . . . provided*" where feasible. The statute separately references both "visitor . . . facilities" and "recreational facilities," indicating that a visitor facility is something different from a recreational resource such as a park, promenade, walking path, dock or golf course. As the "state coastal zone planning and management agency for . . . all purposes" charged with primary responsibility for implementing the Act (§ 30330) it is within Commission's power to interpret section 30213's reference to visitor facilities as mandating the provision of overnight accommodations. To the extent Commission interpreted section 30213 in this way—a determination that does not involve the scope of its authority—we give great weight to its administrative construction. (*Coronado Yacht Club v. California Coastal Commission* (1993) 13 Cal.App.4th 860, 868; see *Ross v. California Coastal Commission*, *supra*, 199 Cal.App.4th at p. 922; *In re Acknowledgement Cases* (2015) 239 Cal.App.4th 1498, 1505 [a court must defer to the agency's interpretation of a statute unless that interpretation contradicts the statute's clear language and purpose]; *Hines v. California Coastal Commission* (2010) 186 Cal.App.4th 830, 849 [it is well established that great weight must be given to the administrative construction of those charged with the enforcement and interpretation of a statute].) But this court must ultimately pass on the statute's construction (*In re Lucas* (2012) 53 Cal.4th 839, 849), and doing so we

conclude this interpretation is not "clearly erroneous" (*ibid*.) because it is consistent with the statute's plain language, which refers to "any privately owned and operated *hotel, motel or other similar visitor-serving facility* . . . ." (§ 30213, italics added.) The statute itself refers to visitor facilities as places for overnight lodging. And such an interpretation is consistent with statewide coastal policy—reflected in amendments effective in 2018—that lower cost overnight accommodations "including hotels, motels, hostels, cabins, and camping opportunities, are essential elements of coastal . . . access" because "[a] lack of affordable accommodations remains a barrier to coastal access." (§ 31411, added by Stats. 2017, ch. 838, § 3, eff. Jan. 1, 2018.) We therefore reject District's assertions that section 30213, and the Act more generally, do not refer to or mandate overnight accommodations.[13]

Nothing prevents Commission from delineating the statewide policies in its findings, explaining a master plan's deficiencies in detail, or suggesting what sorts of visitor facilities meet the Act's goals and section 30213's mandate. Rather, it is within Commission's broad authority to apply its expertise and devise solutions to promote the policy of providing "lower cost visitor . . . facilities," including by specifying overnight accommodations that are the "type of development . . . designed in such a manner to be intrinsically lower cost," in District's master plan. Likewise, the Act does not prevent

---

[13] District did not argue below that it was economically infeasible to provide such overnight facilities. It maintained visitor facilities included not just overnight accommodations, but encompassed "public parks, public areas and promenades, streets and sidewalks, bike paths, parking areas, boat moorings and public boat launches and ramps." Such uses, however, fall in the separate category of "recreational facilities" in section 30213.

Commission from deciding that collection of in-lieu mitigation fees no longer furthers or carries out the legislative mandate that lower cost visitor facilities be provided. District points out that the trigger for collecting such fees has not occurred for some of the past hotel projects and it collected fees for another hotel that can be transferred if not used. But Commission is entitled to conclude that the built-in delays with in-lieu mitigation fees render them ineffectual in actually providing lower cost visitor facilities in connection with the present plan amendment. The fact Commission previously certified District's master plan without provision of such lower cost accommodations or subject to in-lieu mitigation fees does not prevent Commission from now concluding that District's proposed amendment does not further the Act's mandate for lower cost overnight accommodations.

Additionally, Commission's denial was based on a finding that District's proposed amendment was insufficiently specific to permit it to conclude that it met the Act's public access policies, a conclusion well within its review authority under the master plan provisions of the Act. (§ 30711, subds. (a)(4), (b) [requiring master plans contain "information in sufficient detail" to permit a determination of consistency with public access and port master plan policies].) Neither District nor Sunroad meaningfully challenge the conclusion that the amendment lacked specific requirements for the provision of lower cost accommodations either on the site or in the subarea generally. District merely argues that Commission's rejections of economy and midscale accommodations with kitchenettes, refrigerators or microwaves indirectly sets

40

room rates, a claim the trial court properly rejected. Though District also challenges the sufficiency of the evidence supporting Commission's findings, it makes these assertions without explanation or citation to the administrative record, then argues Commission's findings "amount to little more than staff speculation and guesswork . . . ." The trial court in initially reviewing Commission's decision was required to presume it was supported by substantial evidence unless District or Sunroad showed otherwise. (*Ross v California Coastal Commission*, *supra*, 199 Cal.App.4th at p. 921; *Bay Area Citizens v. Association of Bay Area Governments* (2016) 248 Cal.App.4th 966, 998.) It did not rule Commission's findings lacked substantial evidence. Indeed, neither District nor Sunroad objected to Commission's postremand action on that ground.

District argues that courts consistently hold Commission "exceeds its jurisdiction when it strays into policymaking." The broad contention is unsupported by the cited cases, which address Commission's statutory authority under the Act to undertake particular actions, such as require a permit, designate environmentally sensitive habitats, or deny a coastal development permit on particular grounds. (See *City of Dana Point v. California Coastal Commission*, *supra*, 217 Cal.App.4th at pp. 189-190 [Commission lacked appellate jurisdiction under section 30625 to consider appeals of a nuisance abatement ordinance because enactment of the ordinance was not an "appealable action" permitting administrative appeal to Commission]; *Burke v. California Coastal Commission*, *supra*, 168 Cal.App.4th at pp. 1100-1101, 1106, 1108 [Commission lacked jurisdiction to require a permit for a fence, because it fell within a statutory exemption for boundary disputes or settlements under section 30416, subdivision (c)]; *Douda v.*

41

*California Coastal Commission* (2008) 159 Cal.App.4th 1181, 1186, 1191, 1199-1200 [holding Commission possessed authority to designate an environmentally sensitive habitat area before an LCP has been certified, pointing out the Act "does not parse what policies should be specifically enforced or how they should be enforced" in that context, and Commission also had authority under section 30251 to deny a coastal development permit because it would impair scenic and visual resources four and a half miles inland, because the statute "contains no restrictions"]; *Security National Guaranty*, *Inc. v. California Coastal Commission*, *supra*, 159 Cal.App.4th at pp. 418, 422-423 [resolving whether the Act granted Commission the power to declare a site an environmentally sensitive habitat area during an administrative appeal from the grant of a coastal development permit; the statutory scheme for LCP's did not grant Commission the authority to make changes to the content of an LCP (§ 30603), and Commission imposed additional standards not contained in the LCP as well as sought to amend it contrary to section 30514, providing LCP's may be amended "by the appropriate local government"].)

B. *Commission Did Not Violate Any Other Express Statutory Limits on Its Authority in Denying Certification.*

District points to several other provisions of the Act that it suggests limit Commission's jurisdiction in certifying a master plan and confer more power to District. But none of these provisions restrict Commission's authority to prescribe the types of overnight facilities that would further the mandate that lower cost visitor facilities be

42

provided in District's master plan, or suggest methods to ensure developers actually put such facilities in place.

District points to section 30714's short, 90-day, time period within which Commission must act to certify a master plan amendment, as well as its language deeming an amendment approved if Commission fails to take action within that time. But these types of provisions are merely designed to avoid unnecessary bureaucratic delay (see, e.g., *Encinitas Country Day School, Inc. v. California Coastal Commission* (2003) 108 Cal.App.4th 575, 583-584); they do not speak to the scope of Commission's jurisdiction in assessing whether a proposed amendment complies with and furthers the Act's public access policies and deciding what types of facilities best carry out those policies.

District also refers to asserted limits on Commission's "permit authority" in section 30715. The section prevents Commission from exercising its "permit authority . . . provided in Chapter 7 (commencing with Section 30600)" over "new development" *following its certification* of a master plan, and delegates approvals to District at such time. (§ 30715, subd. (a).) The specifically referenced permit authority is for coastal development permits, which are not at issue in this proceeding. This provision in no way limits the scope of Commission's jurisdiction in certifying or denying certification of a port master plan or master plan amendment.

V. *Commission's Denial of Certification Is Not Otherwise Contrary to Law*

Sunroad maintains Commission failed to adopt written findings as required by section 30714, which states a Commission's rejection of any portion of a plan shall be

43

based on written findings of fact and conclusions of law. It suggests Commission did not explain its reasons for rejecting the proposed master plan amendment as modified during the post-remand May 2017 hearing to include District's agreement to pay additional in-lieu mitigation fees. According to Sunroad, this creates an "fundamental obstacle" to Commission's argument that substantial evidence supports its findings.

Neither District nor Sunroad made this procedural challenge to the trial court in objecting to Commission's June 2017 return. We decline to consider such challenges for the first time on appeal where an objection could have been, but was not presented to the trial court by some appropriate method. (See *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002.) In sum, the trial court had no basis to conclude that Commission's denial of certification is otherwise contrary to law.

DISPOSITION

The order is reversed and the matter remanded with directions to the trial court to discharge the writ of mandate, and enter judgment in favor of the California Coastal Commission. Commission shall recover its costs on appeal.

O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


DATO, J.

Filed 10/1/18

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO UNIFIED PORT DISTRICT, | D072954 |
| Plaintiff and Respondent, | (Super. Ct. No. 37-2015-00034288-CU-WM-CTL) |
| v. | |
| CALIFORNIA COASTAL COMMISSION, | ORDER MODIFYING OPINION [**CHANGE IN JUDGMENT**] |
| Defendant and Appellant, | ORDER DENYING REHEARING |
| SUNROAD MARINA PARTNERS, LP, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Real Party in Interest and Respondent. | |

THE COURT:

It is ordered that the opinion filed herein on September 7, 2018, be modified as follows:

On page 1, in the first paragraph of the counsel listing, line 3, the words "Plaintiff and Respondent" are replaced with the words "Defendant and Appellant," so that the paragraph now reads:

Xavier Becerra, Attorney General, Daniel A. Olivas, Assistant Attorney General, Jamee Jordan Patterson and Hayley Elizabeth Peterson, Deputy Attorneys General, for Defendant and Appellant.

On page 2, in the third paragraph of the counsel listing, line 2, the words "Defendant and Appellant" are replaced with the words "Plaintiff and Respondent," so that the paragraph now reads:

Thomas A. Russell and Rebecca S. Harrington; Jenkins & Hogin and Christi Hogin, Gregg W. Kettles for Plaintiff and Respondent.

On page 3, in the last line of the second full paragraph, the words "and enter judgment in Commission's favor" are omitted so that the sentence now reads:

We reverse the order and direct the trial court to discharge the writ of mandate.

On page 35, in the sentence starting on line 10 of the first paragraph, "[*sic*]" is omitted so that the sentence now reads:

District argues "[t]he California Legislature put the Port District—not Commission—in charge of figuring out how to achieve the Port Act's mission and advance the policies of the Coastal Act."

On page 45, in the first sentence of the disposition, the words "and enter judgment in favor of the California Coastal Commission" are omitted so that the sentence now reads:

The order is reversed and the matter remanded with directions to the trial court to discharge the writ of mandate.

The petition for rehearing is denied.

The opinion in this case filed September 7, 2018, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

**This modification changes the judgment.**

O'ROURKE, Acting P. J.

Copies to: All parties

3